SIXTH DIVISION

FILED: 06/30/00

Nos. 1-97-3655, 1-97-3658, 1-97-3697  (consolidated).

SCHAL BOVIS, INC., MKDG/BUCK 123 ) Appeal from the

PARTNERSHIP and NORTHBROOK ) Circuit Court of

PROPERTY & CASUALTY COMPANY, ) Cook County.

)

Plaintiffs-Appellants, )

)

)

) 94 CH 3447

CASUALTY INSURANCE COMPANY and ) 

AMERICAN STATES INSURANCE CO., ) 

)

Defendants-Counterdefendants-Appellees, and )

)

WAUSAU INSURANCE COMPANY and )

GREAT AMERICAN INSURANCE COMPANY, )

)

Defendants-Counterplaintiffs-Appellants. )

------------------------------------------------------------------------ ) 

)

AMERICAN NATIONAL FIRE INSURANCE )

COMPANY (Great American) ) 

)

Plaintiff-Appellant, )

)

v. ) 95 CH 1947

)

AMERICAN STATES INSURANCE and ) 

CASUALTY INSURANCE COMPANY ) Honorable

) Ronald C. Riley,

Defendants-Appellees. ) Judge Presiding.

PRESIDING JUSTICE ZWICK delivered the opinion of the court:

This coverage dispute concerns an attempt by three insurers to recover from two non-paying insurers money paid to settle a judgment in an underlying personal injury action. The separate actions were consolidated in the circuit court, and the court entered final judgments in favor of defendants Casualty Insurance Company (Casualty) and American States Insurance Company (American States) on August 27, 1997. The court modified its order on September 24, 1997, to include a finding that there was no just reason to delay enforcement or appeal. We have jurisdiction in each of the appeals pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304 (a)).

I. BACKGROUND

A. The Coverage Dispute

The coverage dispute involves three sets of pleadings. We address each in the order it was filed.

(1) The Great American Complaint

On January 12, 1995, Great American Insurance Company (a/k/a "American National Fire Insurance Company")(hereinafter, "Great American") filed an amended complaint for equitable contribution against Casualty and American States. Great American alleged that it and the four other insurance companies now before us issued policies naming MKDG/Buck 123 Partnership (Buck) as an additional insured in connection with a construction project at 515 North State Street in Chicago. In May of 1994, a worker on the site, William Keegan, obtained a judgment against Buck and others in the amount of $2,892,500. (Hereinafter, we refer to this judgment as "the 
Keegan
 judgment" and the associated litigation as "the 
Keegan
 litigation" or "the 
Keegan
 action.")

Great American alleged that three of the five insurers, Great American, Wausau Insurance Company (Wausau) and Northbrook Property & Casualty Company (Northbrook), satisfied this judgment. The other two insurers, Casualty and American States, failed to pay any part of the judgment, even though Keegan's injuries arose out of the work performed by Casualty's and American States' named insureds. Great American alleged that it was entitled to equitable contribution from Casualty and American States to the extent that Great American's payment exceeded its proportionate share of the common liability to Keegan. Specifically, Great American alleged that its proportionate liability was 20 percent, or $578,500, but that it had paid $1 million because Casualty and American States failed to contribute to the satisfaction of the judgment. Great American alleged that Casualty and American States were each indebted to it for $210,750. 

(2) The Schal/Buck/Northbrook Complaint

On March 3, 1995, Schal Bovis, Inc. (Schal), Buck and Northbrook filed a complaint for declaratory judgment and other relief. The Schal/Buck/Northbrook complaint set forth seven causes of action. Counts II, III and IV (the subject of this consolidated appeal) were based on Casualty’s and American States’ wrongful refusal to defend and indemnify Schal and Buck in the 
Keegan
 action. (Counts I, V, VI and VII were the subject of an appeal previously decided in 
Schal Bovis, Inc. v. Casualty Insurance Co.
, No. 1-96-2968, 1999 Ill. App. LEXIS 334, 1999 WL 529428 (
May 21, 1999)). 

Count II of the Schal/Buck/Northbrook complaint sought a declaration that Casualty and American States were estopped from denying coverage to Schal and Buck with respect to the 
Keegan
 action. Count III sought full reimbursement from Casualty and American States of the $842,916.67 Northbrook paid on behalf of Schal and Buck. Count IV sought equitable contribution from Casualty and American States to Northbrook's contribution toward satisfaction of the 
Keegan
 judgment.

(3) The Wausau Counterclaim

Counts VI and VII of the Schal/Buck/Northbrook complaint were brought against Wausau. On August 31, 1995, Wausau filed a counterclaim in the Schal/Buck/Northbrook action seeking, 
inter alia
, equitable contribution against Casualty and American States. Wausau sought a determination of whether Keegan's injury "arose out of" the operations of two subcontractors insured by Casualty and American States, Alcan United Concrete, Inc. (Alcan) and/or Chicago Forming, Inc. (Chicago Forming). Wausau alleged that these subcontractors were insured by Casualty and American States and that Schal and Buck were listed as "additional insureds" on their policies. Wausau sought equitable contribution from American States and Casualty in an amount to be determined by the trial court in the event the fact finder found in its favor.

B. The Underlying Litigation

The underlying litigation involved Keegan's fall from a steel beam while he was working on a construction project at 515 North Michigan Avenue in Chicago on June 9, 1989. Buck owned the site, and Schal was the general contractor. Both were insured by Northbrook.

Various other parties which were subcontractors on the project were subsequently added to the 
Keegan
 action. These included Ozark Steel Fabricators, Inc. and Ozark Steel Sales, Inc. (collectively "Ozark") which were insured by Wausau; Ranken Steel, Inc. and R.S. Erectors, Inc. (collectively "Ranken") which were insured by Great American; Alcan which was insured by Casualty; and Chicago Forming which was insured by American States. The 
Keegan
 action alleged that each defendant was “in charge of the work” at the site and that each violated the Structural Work Act in proximately causing Keegan’s injuries. Buck and Schal were additional insureds on each of the subcontractors’ policies. 

Schal and Buck tendered their defenses to Wausau, Great American, Casualty and American States. Wausau and Great American accepted the tender. Casualty participated in Schal’s and Buck’s defense, but withdrew when its named insured, Alcan, was dismissed from the suit. American States never participated in Schal’s or Buck’s defense.
(footnote: 1) The jury returned a verdict in favor of Keegan and assessed his recoverable damages in the amount of $2,892,500 against 
Schal, Buck and Ozark. The jury was not asked to apportion fault. Judgment was entered on the verdict.

C. Summary of Policy Coverage

The coverage now at issue can be summarized as follows: 

Insurance Named Additional

Company Insured Limits Insured(s)

Great American Ranken $1,000,000 Schal

Buck

Ozark 

Wausau Ozark $1,000,000 Schal

Buck

Casualty Alcan $1,000,000 Schal

Buck

American States Chicago Forming $1,000,000 Schal

Buck

Northbrook Schal $1,000,000 Buck

The “additional insured” endorsement to the Casualty policy (issued to Alcan as named insured) provided, in pertinent part: 

“It is agreed that the persons insured provision of the policy shall include the following:

Any other person or organization whom the named insured [Alcan] has agreed in writing to include as an insured interest with respect to operations performed by or for the named insured ***.” 

The “additional insured” endorsement to the American States policy (issued to Chicago Forming as named insured) provided, in pertinent part:

“Who is an Insured ‘Section I’ is amended to include as an insured the person or organization shown in the schedule, but only with respect to liability arising out of ‘your work’ for that insured by or for you [Chicago Forming].”

Northbrook, Schal and Buck alleged that the Northbrook policy contained an endorsement causing the Northbrook policy to apply in excess of the Wausau, Great American, Casualty and American States policies.

D. Trial Court Rulings

On August 27, 1997, the trial court granted Casualty's motion for summary judgment against Northbrook, Buck and Schal, and its motions for summary judgment against Great American and Wausau. The court also granted American States' motion for summary judgment against Northbrook and granted American States' motions to dismiss the claims of Wausau and Great American.  The trial court did not articulate the reasons for its rulings.

E. The Appeals

In appeal No. 1-97-3658, Great American appeals from the trial court's order in favor of Casualty and American States. 

In appeal No. 1-97-3655, Schal, Buck and Northbrook appeal from the trial court's grant of summary judgment in favor of Casualty and American States. 

Appeal No. 1-97-3697 is brought by Wausau and seeks review of the trial court's order in favor of Casualty and American States in connection with Wausau's counterclaim in the Schal/Buck/Northbrook case.

II. ANALYSIS
 
 

A. Northbrook's Status as an Excess Insurer

We begin our analysis by noting that Northbrook has brought alternative claims. In its count seeking reimbursement from Casualty and American States, Northbrook asserts that it is an excess insurer of Schal and Buck. In its count seeking equitable contribution, however, it asserts that it insured the "same risk" as the other insurers who were alleged to be primary carriers. Illinois law is clear that excess and primary insurers insure different risks. See 
e.g.
 
Home Indemnity Co. v. General Accident Insurance Co.
, 213 Ill. App. 3d 319, 572 N.E.2d 962 (1991). Thus, as we discuss more fully below, whether the policy provided primary or excess coverage is an important first consideration because Northbrook's claim for reimbursement is dependent upon it establishing that it was an excess insurer called upon to make payments which should have been made by Casualty and American States as primary insurers, while Northbrook's claim for equitable contribution is dependent upon it establishing that it was a co-primary insurer with the other carriers.

A review of the policy of insurance issued by Northbrook shows that the policy was initially written on a primary basis insuring Schal. The policy does provide in an "other insurance" clause that the coverage provided would be considered excess insurance, but only in the case where (1) the other insurance was  property insurance, (2) the other insurance was for fire, explosion aircraft or vehicle insurance for premises rented to Schal, or (3) if the loss arose out of the maintenance or use of aircraft, autos or watercraft. The 
Keegan
 claim did not trigger any of these provisions. However, effective August 1, 1988, Northbrook issued an endorsement to the policy which provided that the "other insurance" clause was amended to make the policy an excess policy "[i]n those instances where an Insured under [the] policy is an Additional Insured on a policy issued by any other insurer." 

In addition, also effective August 1, 1988, Northbrook executed an endorsement entitled "Blanket Persons Insured by Contract." The provisions of this endorsement provided:

"IT IS AGREED THAT:

A. The [P]ersons Insured Provision of this policy is amended to include as Insured any person or organization whom the Named Insured has agreed by contract, either oral or written, prior to loss, to include as an insured with respect to operations performed by, for, or on behalf of the Named Insured. 

* * *

C. Where such contract *** stipulates that the Named Insured shall provide primary insurance, this policy shall be primary for the Additional Insured (s), except that with respect to coverage provided to the Additional Insured(s) by contractors, subcontractors, whether or not hired by the Named Insured, this policy shall be excess over said coverage."

Great American argues that the Blanket Policy Insured by Contract endorsement should be read to make Northbrook's coverage primary because it states that the policy "shall be primary for the Additional Insureds." Although Great American concedes that an exception immediately follows the language regarding primary coverage, Great American argues that this part of the endorsement is "grammatically unintelligible" and should not be given any effect.

We need not spend undue time untangling the precise meaning of the Blanket Policy Insured by Contract endorsement. It is undisputed that Northbrook issued an endorsement effective the same day as the Blanket Policy Insured by Contract endorsement which amended the "other insurance" clause. This language is clear and unambiguous and indicates that Northbrook was intended to be an excess insurer whenever its insureds (Schal and Buck) were named as additional insureds on any policy issued by another carrier. Great American argues that "a clear term affording primary coverage [in the Blanket Policy Insured by Contract] prevails over gibberish relating to excess coverage." However, in the absence of any suggestion by Great American as to a reasonable interpretation of the disputed exception, as well as our own significant doubts regarding the applicability of the Blanket Persons Insured by Contract endorsement to the facts before us, we apply the clear and unambiguous terms of the "other insurance" endorsement. It is undisputed that Schal and Buck are insureds under the Northbrook policy, and it is also undisputed that Schal and Buck are additional insureds on each of the policies issued by Great American, Casualty, Wausau and American States. Therefore, by operation of the "other insurance" endorsement, we find Northbrook to be an excess insurer relative to the other insurers in this case.

 
B. The Equitable Contribution Claims.

Each of the appellant-insurers seeks equitable contribution from Casualty and American States.

In insurance law, contribution is an equitable principle arising among co-insurers which permits one who has paid the entire loss to be reimbursed from other insurers who are also liable for the loss.  
Royal Globe Insurance Co. v. Aetna Insurance Co.
, 82 Ill. App. 3d 1003, 1005, 403 N.E.2d 680 (1980), citing 6 Appleman, Insurance Law & Practice § 3902, at 422 (1972). The reason for this rule is that one insurer has paid a debt which is equally owed by the other insurers. 
Royal Globe
, 82 Ill. App. 3d at 1005, citing 16 Couch on Insurance § 62:141, at 560-61 (2d ed. 1966). 

In order for an insurer to recover under a theory of equitable contribution, the insurer seeking contribution must prove: (1) all facts necessary to the claimant's recovery against the insured; (2) the reasonableness of the amount paid to the insured; and (3) an identity between the policies as to parties and insurable interests and risks. 
Royal Globe
, 82 Ill. App. 3d at 1005; see also 
Hall v. Country Casualty Insurance Co.
, 204 Ill. App. 3d 765, 772, 562 N.E.2d 640 (1990). In this case a jury determined that Schal, Buck and Ozark were jointly and severally liable to Keegan in the amount of $2.8 million, and there is no dispute the various policies now at issue covered Schal and Buck. The first and second requirements of a claim for equitable contribution between insurers are therefore satisfied. 

Casualty and American States argue that the third requirement for equitable contribution, that there be an identity of parties, insurable interests and risks, is not met in the present case. We agree.

The requirement that there be an  identity of parties, insurable interests and risks  is discussed in Couch on Insurance 3d, wherein it is stated:

"It is not necessary that the policies provide identical coverage in all respects in order for the two policies to be considered concurrent, and each insurer entitled to contribution from the other; as long as the particular risk actually involved in the case is covered by both policies, the coverage is duplicate, and contribution will be allowed. To illustrate, the fact that the first liability insurer's policy covered only property damage while the second insurer's policy covered bodily injury and property damage did not relieve the first insurer from having to contribute; both policies covered the same risk because both provided coverage for property damage that occurred during their respective policy periods."  
Couch on Insurance
, § 218:6  

In Illinois, an excess insurer cannot seek equitable contribution from a primary insurer because excess carriers and primary carriers insure different risks. See 
Home Indemnity Co. v. General Accident Insurance Co.
, 213 Ill. App. 3d 319, 572 N.E.2d 962 (1991); 
Pekin Insurance Co. v. Cincinnati Insurance Co.
, 157 Ill. App. 3d 404, 510 N.E.2d 524 (1987); 
Illinois Emcasco Insurance Co. v. Continental Casualty Co.
, 139 Ill. App. 3d 130, 487 N.E.2d 110 (1985). We have already determined that Northbrook insured Schal and Buck only on an excess basis and Great American, Wausau, Casualty and American States were primary carriers. Thus, Northbrook may not seek equitable contribution from the other insurers because it did not insure the same risks as the other carriers.

The same general rationale precludes Great American and Wausau from seeking equitable contribution from Casualty and American States. Although the Great American policy covered Schal and Buck as additional insureds, it did so only to the extent that Schal's and Buck's liability arose out of Ranken's work. The Wausau policy covered Schal and Buck from liability, but only when that liability arose out of Ozark's work. Clearly, the risk that a plaintiff might be injured in connection with Ranken's work is a different risk than the risk that a plaintiff might be injured in connection with Ozark's work. These risks are, in turn, different than the risks associated with a plaintiff being injured in connection with Alcan's work or in connection with Chicago Forming's work (as is required by the Casualty and American States policies). Thus, because each insurer insured substantively different risks, each is precluded from seeking equitable contribution from the others.

C. Claims by Schal, Buck and Northbrook against Casualty and American States for Reimbursement

In addition to seeking equitable contribution, Northbrook and its insureds (Schal and Buck) sought reimbursement from Casualty and American States. An action by an excess insurer seeking reimbursement from primary insurers is a distinct remedy, different than equitable contribution.  See e.g., 
New Amsterdam Casualty Company v. Certain Underwriters at Lloyds, London
, 34 Ill. 2d 424, 216 N.E.2d 665 (1966); 
Home Indemnity Company v. General Accident Insurance Company
, 213 Ill. App. 3d 319, 572 N.E.2d 962 (1991). Recovery under a reimbursement theory requires only a finding that Casualty and/or American States owed coverage to Schal and Buck with respect to the judgment; to wit, that Schal's and Buck's liability to Keegan at least in part arose out of the work by Casualty's and American States' respective insureds (Alcan and Chicago Forming). In such a circumstance, Northbrook, as an excess insurer, should not have had to pay any claim on behalf of Schal and Buck until the Casualty and American States limits were exhausted.

Schal, Buck and Northbrook sought a declaration that Schal and Buck were insureds under the Casualty and American States' policies, that those insurers were obliged to reimburse Northbrook as Schal’s and Buck’s remaining insurer for Northbrook’s payment of the balance of the 
Keegan
 judgment, and that those insurers’ breaches of their duty to participate in Schal’s and Buck’s defense in the 
Keegan
 action estopped them from asserting any policy defenses to their subsequent indemnity obligations. The trial court granted summary judgment in favor of Casualty and American States on this claim.

A motion for summary judgment is a drastic remedy that should be granted only when the pleadings, depositions, and admissions on file, together with the affidavits, show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  
Gilbert v. Sycamore Municipal Hospital
, 156 Ill. 2d 511, 517-518, 622 N.E.2d 788, 792 (1993). The standard of review of a trial court's decision on a motion for summary judgment is 
de novo
. 
Andrews v. Cramer
, 256 Ill. App. 3d 766, 769, 629 N.E.2d 133 (1993).

Casualty and American States asserted two principal defenses against the reimbursement action. First, they claimed that neither Schal nor Buck properly tendered their respective defenses of the 
Keegan
 action so as to activate the respective coverages. Second, Casualty and American States argued that neither of their policies applied to provide coverage to either Schal or Buck because the respective named insureds were not found liable in the 
Keegan
 action. 

In order to properly address the reimbursement claim and Casualty's and American States' defenses thereto, we need to address five distinct sub-issues: (1) whether the allegations made in the 
Keegan
 action give rise to a duty to defend Schal and Buck under the Casualty and American States’ policies; (2) whether defendant American States received adequate notice of the suit sufficient to trigger its coverage obligations; (3) whether
 
the doctrines of 
res judicata
 and/or collateral estoppel relieve Casualty and American States from their obligation to defend and indemnify Schal and Buck when their named insureds have been dismissed from the underlying litigation; (4) whether the failure of the trial court to apportion fault in the 
Keegan
 action precludes Northbrook from seeking reimbursement; and (5) whether Casualty and American States, having had actual notice that their policies of insurance potentially covered Schal and Buck, are estopped from denying coverage by their failure to defend under a reservation of rights or file a declaratory judgment action to determine their coverage and defense obligations.

(1) Casualty's and American States' Duty to Defend Schal and Buck
 

We first address whether the allegations of the 
Keegan
 action gave rise to a duty on the part of Casualty and American States to defend Schal and Buck under the terms of their respective policies. Before Casualty or American States can be obligated to indemnify Schal and Buck for the 
Keegan
 judgement, Casualty and American States must first have been obligated to defend Schal and Buck
.

The duty to defend is much broader than the duty to indemnify. 
Crum v. Forster Management Corp. v. Resolution Trust Corp.
, 156 Ill. 2d 384, 620 N.E.2d 1073 (1993). It is well settled that, "in determining whether an insurer has a duty to defend its insured, the court must look to the allegations in the underlying complaint and compare these allegations to the relevant coverage provisions of the insurance policy. [Citation.]" 
Crum & Forster Managers Corp.
, 156 Ill. 2d at 393. "If the facts alleged * * * fall within, or potentially within, the policy's coverage provisions, then the insurer has a duty to defend the insured in the underlying action. [Citation.]" 
Crum & Forster Managers Corp.
, 156 Ill. 2d at 393. See also 
Outboard Marine Corp. v. Liberty Mutual Insurance Co.
, 154 Ill. 2d 90, 107-108, 607 N.E.2d 1204 (1992); 
Maryland Casualty Co. v. Peppers
, 64 Ill. 2d 187, 193-94, 355 N.E.2d 24 (1976). Any doubts about coverage are to be resolved in the insured's favor. 
Bonnie Owen Realty, Inc. v. Cincinnati Insurance Co.
, 283 Ill. App. 3d 812, 816, 670 N.E.2d 1182 (1996).

Coverage exists for Schal and Buck in this case under the "Additional Insured" endorsements of both the Casualty and American States' policies. The additional insured endorsement to the Casualty policy provided that Casualty would cover any person or organization which Alcan had agreed in writing to include, to the extent that the person or organization was named  with respect to operations performed by or for Alcan. The American States policy covered any person or organization included in its schedule, but only with respect to liability arising out of Chicago Forming's work for Schal and Buck. It is conceded that Alcan had agreed in writing to include Schal and Buck in its policy coverage, and that Chicago Forming included Schal and Buck in the schedule of persons it wished covered by its policy.

The 
Keegan
 action alleged that Schal, Buck, Alcan, Chicago Forming, Ozark and the other defendants were present during the course of the erection of the building on which Keegan worked; that these defendants participated in coordinating the work being done; that they designated various work methods, were responsible for inspecting the work and had authority to stop the work in the event it was being done in a dangerous manner. The complaint further alleged that the defendants put in place a certain beam to be used with the work and that the beam's use violated the Structural Work Act in that the beam was not a safe or suitable support for the protection of the plaintiff. The complaint further alleged that each of the defendants failed to erect an appropriate scaffold.

Clearly, such allegations were sufficient to trigger coverage by Casualty and American States on behalf of Schal and Buck. Keegan's injuries were alleged to have occurred in connection with work which was supervised by Alcan and Chicago Forming.  As such, Casualty and American States were obligated to defend Schal and Buck. 

(2) Whether American States Received Adequate Notice to Require It to Defend Schal and Buck

Although the complaint ultimately filed by Keegan was clearly sufficient to trigger coverage of Schal and Buck by American States, Schal and Buck failed to tender their defense in the 
Keegan
 action to American States until just before trial. American States argues that this late notice bars any claim by Northbrook, Schal or Buck under the terms of the policy, which specifically calls for immediate notice of any suit. Although American States admits that it had actual notice of the 
Keegan
 litigation relatively early on in the proceedings and also had notice that it insured Schal and Buck as additional insureds on its policy with Chicago Forming, American States claims that Schal's and Buck's failure to tender timely notice means that coverage was not triggered.

After the trial court granted summary judgment in favor of American States and against Schal, Buck and Northbrook, our supreme court decided 
Cincinnati Insurance Co. v. West American Insurance Co.
, 183 Ill. 2d 317, 701 N.E.2d 499 (1998). In that case, the court determined that insurers have an affirmative duty to contact their insureds when they have knowledge that the insured may be covered by a policy issued by the insurer because requiring formal notice in such a circumstance both undermines the purposes for which the insurance was issued and the State's interest in having an insured adequately represented in the underlying proceedings. The court stated that requiring actual tender:

"requires an insured to jump through meaningless hoops towards an absurd end: telling the insurer something it already knows. Such a rule injects a degree of gamesmanship into the insurer-insured relationship without providing any valid corresponding benefit. In fact, the only benefit of such [a] rule is to create a possibility – where none would otherwise exist – for an insurer to escape an obligation it otherwise owes its insured." 
Cincinnati Insurance Co.
, 183 Ill. 2d at 328-29, quoting 
Federal Mutual Insurance Co. v. State Farm Mutual Automobile Insurance Co.
, 282 Ill. App. 3d 716, 725 (1996). 

With regard to the reasonableness of an insurer presuming that its insured has decided to forgo coverage in the absence of written notice, the court stated:

"The duty to defend may be discharged simply by contacting the insured to ascertain whether the insurer's assistance is desired. If the insured indicates that it does not want the insurer's assistance, or is unresponsive or uncooperative, the insurer is relieved of its duty to defend." 
Cincinnati Insurance Co.
, 183 Ill. 2d at 326.

Rather than seek to clarify the status of coverage for Schal and Buck when American States learned of its potential coverage liability, the record shows that an employee of American States deliberately determined 
not
 to request clarification -- lest he alert Schal and Buck thereby to the possibility of coverage by American States. In an internal memorandum dated  October 28, 1993, this employee stated regarding the issue, "I have not pursued the tender very hard since I was afraid that additional action by us would just start up Schal's tender activity to us." 

This type of sharp claim practice by an insurer is the very thing the 
Cincinnati Insurance Co.
 case roundly condemned. An insurer which knows that its policy potentially covers a party to a lawsuit should not be allowed to avoid its potential obligations by remaining silent with the hope that the potentially covered insured will not formally tender its defense. Accordingly, we find that the failure of Schal and Buck to give formal written notice to American States is not a proper defense to coverage.

(3) Whether 
Res Judicata
 and/or Collateral Estoppel Relieve Casualty and American States of Their Obligations to Defend and Indemnify Schal and Buck when Their Named Insureds were Dismissed from the Underlying Litigation.

Casualty and American States each argued that, assuming valid tenders of defense, neither was obligated to indemnify Schal and Buck for the excess portion of the 
Keegan
 judgment because their respective named insureds (Alcan and Chicago Forming) were adjudicated not to be liable for Keegan's injuries. Therefore, they contend, Schal's and Buck's liabilities did not "arise out of" or occur "with respect to" their named insureds' conduct. They assert, essentially, that the question of coverage was either decided or should have been decided in the 
Keegan
 action and that they are protected by the doctrines of 
res judicata 
and/or collateral estoppel.

The doctrine of 
res judicata
 bars a subsequent suit between the same parties involving the same cause of action where a court of competent jurisdiction has already rendered a final judgment on the merits. 
Rein v. David A. Noyes & Co.
, 172 Ill.2d 325, 665, N.E.2d 1199 (1996). The doctrine precludes litigation of what was actually decided in the first action as well as what could have been decided in that suit. 
People ex rel. Bussis v. Progressive Land Developers, Inc.
, 151 Ill. 2d 285, 602 N.E.2d 820 (1992). Our supreme court recently adopted the "transactional test" for determining whether a subsequent action involves the same cause of action as a prior suit. 
River Park, Inc. v. City of Highland Park
, 184 Ill. 2d 290, 703 N.E.2d 883 (1998). 

The present action does not involve the same transaction, that is, the same group of operative facts, as the 
Keegan
 lawsuit. The 
Keegan
 action involved liability for personal injuries under the Structural Work Act, whereas Schal, Buck and Northbrook seek reimbursement for payments Northbrook made to Keegan which should have been made by Casualty and American States under the terms of certain policies of insurance. A finding that a party is not "in charge of" work is very different than a finding that injuries did not "arise out of" that party's work or were not "connected with," "incidental to," "originating from," "growing out of," or "flowing from" the work. See 
Sportmart
, 268 Ill. App. 3d at 977, citing 
Maryland Casualty Co. v. Chicago & North Western Transportation Co.
, 126 Ill. App. 3d 150, 466 N.E.2d 1091 (1984); 
Consolidated Rail Corp. v. Liberty Mutual Insurance Co.
, 92 Ill. App. 3d 1066, 416 N.E.2d 758 (1981). In fact, whether Schal's and Buck's liability arose out of the work of Alcan and Chicago Forming could not have been determined in the underlying case because that issue was germane only to coverage, rather than to liability. If Casualty and American States had wished their endorsements to extend coverage only where their named insureds were determined to be liable, they could have easily modified the endorsements to so provide. 
National Union v. Glenview Park District
, 158 Ill. 2d at 123. 

Collateral estoppel applies only to issues actually litigated and decided, not to matters which might have been litigated or decided. 
Housing Authority v. Y.M.C.A.
, 101 Ill. 2d 246, 461 N.E.2d 959 (1984). The party asserting collateral estoppel bears the "heavy burden of showing with clarity and certainty that the identical issue was decided in the prior case." 
Peregrine Financial Group, Inc. v. Martinez
, 305 Ill. App. 3d 571, 581, 712 N.E.2d 861 (1999). As we have already determined, whether Schal's and Buck's liability arose out of the work of Alcan and Chicago Forming was neither litigated nor decided in the 
Keegan
 case. 

(4) Whether the Failure of the Trial Court to Apportion Fault in the Keegan Action Precludes Northbrook from Seeking Reimbursement

Both Casualty and American States argue that 
United States Fidelity and Guaranty Co. v. Continental Casualty Co.
, 198 Ill. App. 3d 950, 556 N.E.2d 671 (1990) stands for the proposition that Illinois courts will not apportion fault among insureds-defendants in a later declaratory judgment action, and that any determination as to the degree of fault amongst insureds must be determined by the trial court hearing the underlying matter, or is waived. With regard to the Schal, Buck and Northbrook complaint, however, this argument misconstrues the nature of the action. Northbrook does not seek to apportion fault at all, but simply to assert that it should not have been liable for anything other than the excess portion of the judgment. Northbrook seeks full reimbursement for payments it was required to make due to Casualty's and American States' refusal to indemnify Schal and Buck. 

Even so, the central holding of 
U.S.F.&G.
 is merely that primary insurers may not obtain equitable contribution from excess carriers. With regard to that opinion's discussion of apportionment and the statement that "there must be a liability determination as between the joint tortfeasors *** before the obligations of the insurers can be determined" (
U.S.F.&G.
, 198 Ill. App. 3d at 955), this language overlooks the fact that the relative liability of the insureds is not always germane to the issues raised in the underlying dispute. Where a case goes to judgment without an apportionment of fault, as in the 
Keegan
 litigation, it is inherently unfair to use that fact to prejudice an insurer which was not a party in the initial litigation, and which had no right to raise the issue in the initial proceeding. Accordingly, both because the discussion of apportionment in 
U.S.F.&G.
 was not central to its decision and because it is inherently unfair to apply 
U.S.F.&G.
 against an insurer which was not a party in the prior litigation, we treat the statements made therein relative to apportionment of fault as 
obiter dicta
. See 
Ko v. Eljer Industries, Inc.
, 287 Ill. App. 3d 35, 41, 678 N.E.2d 641 (1997).

(5) Whether Casualty and American States are Estopped from Denying Coverage to Schal and Buck Because of a Failure to Defend the Keegan Action Under a Reservation of Rights or File a Declaratory Judgment Action to Determine Coverage Obligations.

The record shows Casualty initially agreed to accept the defense, but only to the extent the proof established that Keegan's injuries arose out of Alcan's work. When the trial court found that there was no evidence to establish that Alcan had liability to Keegan, the court granted summary judgment in favor of Alcan. Casualty promptly withdrew. American States also failed to defend, as noted above, on the improper ground that the tender was not timely.

The estoppel doctrine provides that an insurer which contends that a complaint potentially alleging coverage is not covered under a policy which includes a duty to defend may not simply refuse to defend the insured. Such insurer must defend the suit under a reservation of rights or seek a declaratory judgment that there is no coverage. If the insurer fails to do this, and is subsequently found to have wrongfully denied coverage, it is estopped from later raising policy defenses to coverage. 
Waste Management, Inc. v. International Surplus Lines Insurance Co.
, 144 Ill. 2d 178, 207-08, 579 N.E.2d 322 (1991); 
Maryland Casualty v. Peppers
, 64 Ill. 2d 187, 355 N.E.2d 24 (1976). This principle is based upon the general principle of contract law that a party who has breached the terms of its contract may not rely on the terms of the same contract to avoid its obligations. 
M/A Com, Inc. v. Perricone
, 187 Ill. App. 3d 358, 543 N.E.2d 228 (1989), citing 
Kinnan v. Charles B. Hurst Co.
, 317 Ill. 251, 148 N.E.2d 12 (1925). 

If the insurer fails to take either of the actions required (i.e., defending under a reservation of rights or seeking a declaratory judgment action), the insurer will be estopped from raising coverage defenses and will be liable for an award against the insured, because the duty to defend is broader than the duty indemnify. 
Bedoya v. Illinois Founders Insurance Co.
, 293 Ill. App. 3d 668, 677, 688 N.E.2d 757 (1997); 
M/A Com, Inc.
 187 Ill. App. 3d at 360.
  An insured asserting estoppel against an insurer which has denied coverage need not show that it was prejudiced by the insurer's failure to provide coverage. See 
Central Mutual Insurance Co. v. Kammerling
, 212 Ill. App. 3d 744, 571 N.E.2d 806 (1991); 
Aetna Casualty & Surety Co. v. Coronet Insurance Co.
, 44 Ill. App. 3d 744, 748-49, 358 N.E.2d 914 (1976). 

The instant case is similar to the case in 
Bedoya
 where the insurer waited until after 

the underlying litigation was resolved before seeking to adjudicate its liability. In this case, the record shows that Casualty defended until it made its own unilateral (but incorrect) determination that it no longer owed coverage to Schal and Buck; then it stopped defending without reserving its rights or seeking a declaration of its obligations. Similarly, American States acknowledged that its policy potentially covered Schal and Buck, but sat by until it was sued for defense costs (by Great American and Wausau) and for indemnity (by Northbrook).

Because of Casualty's and American States's breach of their duty to defend Schal and Buck in the underlying action, we find Casualty and American States are estopped from denying their obligation to indemnify Schal and Buck for the subsequent judgments against them. Accordingly, on remand, neither Casualty nor American States may raise defenses to Northbrook's claim such as to argue that Keegan's injuries did not arise out of Chicago Forming's work, or that they did not occur with respect to Alcan's work. 

III. CONCLUSION

In sum, we find that the trial court properly granted Casualty's motion for summary judgment and American States' motion to dismiss the complaint with prejudice in appeal No. 1-97-3658.  We also affirm the trial court's grant of summary judgment in favor of Casualty and American States in appeal No. 1-97-3697. 

We reverse and remand the trial court's grant of summary judgment in favor of Casualty and American States and against Northbrook in appeal in No. 1-97-3655. 

Affirmed in part; reversed in part and remanded.

CAMPBELL, J. and QUINN, J., concur.

FOOTNOTES
1: During the 
Keegan
 litigation, Keegan voluntarily dismissed
 both Alcan (Casualty's named insured) and Chicago Forming (American States' named insured). However, those parties remained in the action as third-party defendants. At the end of the trial, verdicts were directed in favor of the third-party defendants on the basis that neither was in charge of the work.