1-98-2673

NORTH AMERICAN INSURANCE COMPANY, ) Appeal From The

) Circuit Court

Plaintiff-Appellant, ) Of Cook County

)

)

 )         No. 94 CH 11314

KEMPER NATIONAL INSURANCE COMPANY )

and AMERICAN MOTORIST INSURANCE ) 

COMPANY, ) Honorable

) Stephen Schiller,

Defendants-Appellees. ) Judge Presiding.

JUSTICE REID delivered the opinion of the court:

This matter originally arose out of an insurance dispute filed as a declaratory judgment action in the circuit court of Cook County.  The matter was disposed of by the trial court on defendant American Motorist Insurance Company's (American Motorist) motion for summary judgment.  Defendants American Motorist and Kemper National Insurance Company (Kemper) are hereinafter collectively referred to as defendants.  The trier of fact found no genuine issues of material fact in this controversy.  We disagree and, therefore, reverse.

I

Defendant American Motorist issued a workers' compensation insurance policy to Dycast, Inc.  North American Insurance Company (North American), a group health insurer, issued a health insurance policy to Dycast.  Daniel Ferguson was employed by Dycast and covered under both policies.

Ferguson and his heirs claimed he was injured in the course of his employment while lifting a large object, though multiple workers' compensation adjustment-of-claim forms reflect confusion as to the exact nature of the object.  Ferguson was treated for his injuries and his preexisting conditions at Sherman Hospital, Loyola's Foster G. McGraw Hospital and by doctors associated with Loyola.  This treatment resulted in substantial medical expenses.  A dispute arose as to whether the injuries were work related and therefore covered under the American Motorist workers' compensation policy.  Ferguson, in addition to having been injured, had medical issues related to a prior kidney transplant.  He was, according to Dr. William J. Cahill, rejecting the kidney on a chronic basis.  Ferguson was being treated on a long-term basis with medication to combat chronic rejection.  Additionally, Ferguson was considered a diverticulitis patient, which Dr. Cahill opined was a contributing factor to his problems and certainly contributed to his death.  

North American paid the medical providers pursuant to a specific and aggregate stop loss contract, which is an excess policy of group health insurance issued on Dycast's self-insured Employee Retirement Income Security Act (ERISA) plan.  29 U.S.C. § 7001 
et seq.
 (1994).  It did not bring a declaratory action prior to paying the medical claims.  It also did not reserve any rights to raise defenses before paying.  

The workers' compensation claims were ultimately settled pursuant to two orders, one dealing with claims of the decedent and his spouse and the other filed on behalf of the couple's minor child.  A rider to the first settlement order indicated that no amounts were included in the settlement for disputed medical expenses and disputed temporary total disability benefits.  The second settlement agreement contained a similar rider which specifically denied liability for medical bills to cure injuries resulting from the claimed workers' compensation injuries.

The medical providers filed suit in the United States District Court, Northern District of Illinois, for collection of the medical expenses.  The providers sought a determination as to whether Kemper was liable for the medical bills incurred by Ferguson under the policy.  The district court dismissed Kemper on the basis of lack of jurisdiction, finding, in part, that it lacked jurisdiction to hear a claim seeking recovery under the Workers' Compensation Act (820 ILCS 305/1 
et
 
seq
. (West 1996).  The district court also held that Illinois does not allow medical providers to sue workers' compensation insurers directly.

North American filed a complaint for reimbursement and restitution against American Motorist and Kemper in the chancery division of the circuit court of Cook County.  Kemper filed a motion to dismiss based on jurisdictional grounds, claiming that it was not a legal entity, but rather Kemper was a name used to refer to a group of five different insurance companies, one of which is American Motorist.  That motion to dismiss was granted.  The case was reassigned within the chancery division of the circuit court of Cook County for disposition of a motion for summary judgment, said motion forming the basis of this appeal.  The trial court found that the plaintiff's settlement of the medical providers' claims could not give rise to a cause of action under theories of equitable contribution and equitable subrogation or unjust enrichment.  The trial court also ruled that the record did not support a finding of any contractual subrogation.  It found that North American had no obligation to pay the medical claims of the employees who were treated for work-related injuries or illness.  It also found that American Motorists had no obligation to pay those medical expenses that were not for the treatment of work-related injuries or illness.  

II

North American argues that it was proper for it to pay the medical bills in a timely manner because the medical providers should not be made to suffer through a dispute.  North American argues that, since one of the insurance companies would be paying on the claim, it was merely a matter of time before a court decided who would be responsible for the debt.  A more self-interested reason for paying the debt was to cut off any fees and penalties that could potentially have accrued for failure to pay under a workers' compensation or ERISA plan.
  North American stretches to analogize between this situation and the doctrine of equitable contribution, which it claims permits an insurer who has paid an entire loss to be reimbursed from the other co-insurer.  
Aetna Casualty & Surety Co. v. Benes & Associates, Inc.
, 229 Ill. App. 3d 413, 417 (1992).  North American admits that the present case is not a claim for equitable contribution because, while there are two different insurers involved in this case, the applicable insurance policies cover different types of risk.  The fact that one insurer undertakes the burden of a full settlement payment does not mean the insurer is a volunteer. 
Aetna
, 229 Ill. App. 3d at 417.

North American next argues that it is entitled to be repaid for the money it spent based upon the doctrine of equitable subrogation.  “Subrogation has been defined as the substitution of another person in the place of a claimant whose rights he succeeds in relation to the debt or claim or asserted which has been paid by him involuntarily.” 
Bost v. Paulson's Enterprises, Inc.
, 36 Ill. App. 3d 135, 139, 343 N.E.2d 168, 172 (1976).  The right of subrogation may be grounded in equity and may also be founded upon an express or implied agreement.  
State Farm General Insurance Co. v. Stewart
, 288 Ill. App. 3d 678, 686, 681 N.E.2d 625, 630 (1997).  The doctrine of subrogation is broad enough to include every instance in which one person, not a mere volunteer, pays a debt for which another is primarily liable and in which equity and good conscience should have been discharged by the latter. 
Bost
, 36 Ill. App. 3d at 139.  When an innocent party voluntarily makes a payment for which another is liable, the right of subrogation exists as a matter of law and independent of contract. See generally 
Bost
, 36 Ill. App. 3d 135.  Subrogation is allowed to prevent injustice and unjust enrichment but will not be allowed where it would be inequitable to do so. 
Dix Mutual Insurance Co. v. LaFramboise
, 149 Ill. 2d 314, 319 (1992).  The prerequisites to subrogation are: (1) a third party must be primarily liable to the insured for the loss; (2) the insurer must be secondarily liable to the insured for the loss under an insurance policy; and (3) the insurer must have paid the insured under that policy, thereby extinguishing the debt of the third party.  
State Farm
, 288 Ill. App. 3d at 686-87.  

Defendants argue that summary judgment was proper because North American failed to offer evidence to establish the essential elements of equitable subrogation.  Defendants also claim that North American failed to raise a genuine issue of material fact.  Defendants argue that, pursuant to the settled law of Illinois,  North American failed to show that it made the payments pursuant to a legal obligation.  They also argue that North American cannot establish unjust enrichment or restitution.  At the United States District Court stage of the proceedings between these parties, Kemper and American Motorist argued that Ferguson was not injured in the scope of his employment.  It was that denial which formed the basis of their position in the negotiations which ultimately led to the settlement of those workers' compensation claims.  Kemper and American Motorists now seem to be arguing that Ferguson was injured during the course of his employment.  These positions would appear to be inconsistent.  

III

A reviewing court exercises 
de novo
 review when determining whether the circuit court properly granted a motion for summary judgment.  
Anderson v. Alberto-Culver USA, Inc.
, 317 Ill. App. 3d 1104, 1110 (2000).  On 
de novo
 review, we are free to consider any pleadings, depositions, admissions, and affidavits on file at the time of the hearing regardless of whether facts contained therein were presented to the trial court in response to the motion for summary judgment. 
William J. Templeman Co. v. United States Fidelity & Guaranty Co.
, 317 Ill.App.3d 764, 769 (2000).   Summary judgment is a drastic means of disposing of litigation and therefore should be allowed only when the right of the moving party is free from doubt.  
Purtill v. Hess
, 111 Ill. 2d 229, 240  (1986).  In a summary judgment proceeding, the movant is the burdened party. 
Kielbasa v. St. Mary of Nazareth Hospital
, 209 Ill. App. 3d 401, 406 (1991).  Summary judgment must be awarded with caution to avoid preempting a litigant's right to trial by jury or the right to fully present the factual basis of a case where a material dispute may exist. 
Lamkin v. Towner
, 246 Ill. App. 3d 201, 204 (1993).  In determining a summary judgment motion, the pleadings, affidavits, depositions and admissions on file must be construed strictly against the moving party and liberally in favor of the opponent. 
In Re Estate of Hoover
, 155 Ill. 2d 402, 410-11 (1993).  Reversal of a summary judgment motion is warranted where, on review, a material issue of fact or an inaccurate interpretation of the law exists. 
Zoeller v. Augustine
, 271 Ill. App. 3d 370, 374 (1995).  The aim of summary judgment is not to try issues, but to determine whether any triable issues of fact exist. 
Aetna
, 229 Ill. App. 3d at 416. If, from a review of the pleadings and evidentiary material before the trial court, a reviewing court determines that material issues of fact exist or that the grant of summary judgment was based upon an erroneous interpretation of law, reversal is warranted.  
Pagano v. Occidental Chemical Corp.
, 257 Ill. App. 3d 905, 909 (1994).  Plaintiffs are not required to prove their case at the summary judgment stage, but must provide a factual basis which would arguably entitle them to judgment in their favor. 
Aetna
, 229 Ill. App. 3d at 416.  The trial court must strictly construe all evidence and draw reasonable inferences from the record in favor of the nonmoving party.  
Aetna 
, 229 Ill. App.3d at 416. 

The question raised by counsel at the summary judgment stage was whether the injuries sustained by Ferguson were workers' compensation-type injuries or whether they were of a different character sufficient to trigger the terms of the North American policy.  The importance of this inquiry is such that the trier of fact needed to be able to conclude that, as a matter of law, North American's payment of the medical expenses was completely voluntary .  Under these facts this is not a simple inquiry.  If there was any basis by which North American had an interest in whether or not the hospitals got paid, then itsr payment would not be voluntary.  It claims that, at the time it made its payments, it believed it was doing so under the potential threat that its policy would obligate it to pay the debt.  

In addition to his physical injuries, Ferguson had preexisting conditions impacting on these events.  The fact that a workers' compensation claimant may have had a preexisting condition does not preclude an award of benefits upon her showing her condition was aggravated or accelerated by the employment. 
Concrete Structures v. Industrial Comm'n
, 315 Ill. App. 3d 596, 598 (2000).  A workers' compensation claimant needed only to prove some act or phase of his or her employment was a causative factor, not the sole or even principal causative factor, in his or her ensuing injury to receive benefits under the Workers' Compensation Act.  
Concrete Structures
, 315 Ill. App. 3d at 598.  This would be the end of the inquiry but for the events that took place during the course of Ferguson's treatment.  In connection with the workers' compensation claims, Ferguson's medical history and condition were reviewed by Dr. William J. Cahill.  His review suggests a potential medical malpractice claim.  Based upon his history as a transplant patient suffering from chronic rejection, Dr. Cahill felt that the surgery to remove Ferguson's colostomy was performed way too soon.  The procedure to reverse the colostomy was performed only 56 days after the original procedure was done.  According to Dr. Cahill, in a normal patient with no immune problems, a period of three or four months should be waited before the colostomy reversal procedure is done.  As a result, it was not done properly and the leakage caused complications requiring more surgeries.  When infection set in, according to Dr. Cahill, the presence of abscesses aggravated renal failure and led to Ferguson's death.  In light of Dr. Cahill's assessment, the trier of fact should not have been able to determine, as a matter of law, that it was Ferguson's injuries and not the aggravation of his preexisting condition that caused his death.  Because of that, and the underlying questions of facts its represents, the trial judge should not have granted summary judgment.  Instead, there should have been evidentiary proceedings as to the medical basis for the injuries.  If the trier of fact finds that the sole cause of Ferguson's condition was the injury, then North American's payments were arguably voluntary.  If, however, any component of the injuries was outside the scope of workers' compensation, then it would have fallen within the scope of the health insurance policy issued by North American.  Since there was a potential for liability against North American, there was also a potential for it to be obligated to pay any penalties imposed against it for nonpayment of existing debts.  As it argues, it paid the debts to cut off or otherwise limit the potential for liability.  In light of that genuine issue of material fact, it was error for the trial judge to have disposed of the case on summary judgment.  

Finally, this court would be remiss not to comment again on the apparent inconsistencies in the defendants' position.  When this case returns to the circuit court for further proceedings, the trial court should examine closely the parties' positions so as to make certain Kemper and American Motorist are not trying to mend the hold.  The mend the hold doctrine is a common law doctrine that limits the right of a party in a contract suit to change its litigating position. 
Delany v. Marchon, Inc.
, 254 Ill. App. 3d 933, 940 (1993).  The Illinois Supreme Court has described the doctrine as one that estops a contract party from changing the grounds on which he has refused to perform the contract, whether or not it was a ground stated in a pleading or otherwise in the course of litigation. 
Delany
, 254 Ill. App. 3d at 940, citing 
Harbor Insurance Co. v. Continental Bank Corp.
, 922 F.2d 357, 364 (7
th
 Cir. 1990).

Judgment reversed and remanded.

Campbell, P.J. and Buckley, J., concur.