No. 3--00--0846

IN THE 

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2001

CINCINNATI INSURANCE ) Appeal from the Circuit 
Court

COMPANY, as Subrogee to the ) of the 10th Judicial Circuit
 

Rights of
 
Caterpillar, Inc,
 ) Tazewell County, Illinois

a Corporation, and THE )

CINCINNATI INSURANCE COMPANY, )

a Corporation, )

)

Plaintiffs-Appellants, ) 

)

v. ) 

) 

RIVER CITY CONSTRUCTION, ) 
No. 99--L--157

COMPANY
 and Illinois ) 

Corporation, and 
AUTO-OWNERS )

INSURANCE, a 
Foreign )

Corporation Authorized 
to do )

Business in the State of 
 
) 

Illinois,
 
 
) Honorable

) Robert A. Barnes, Jr.,

Defendants-Appellees. 
) Judge Presiding

PRESIDING JUSTICE HOMER delivered the opinion of the court:

 

Cincinnati Insurance Company (Cincinnati) filed a two-count complaint seeking contribution from River City Construction Company (River City) and Auto-Owners Insurance Company (Auto-Owners) for a work-related injury settlement paid by Cincinnati to Victor Modugno.  Cincinnati appeals from the judgment of the trial court granting the defendants' separate motions to dismiss, filed pursuant to section 2--619 of the Code of Civil Procedure (735 ILCS 5/2--619 (West 2000)).  We affirm in part and reverse in part.

BACKGROUND

In November 1995, Victor Modugno was working for Illinois Piping Corporation (Illinois Piping) at the Caterpillar Corporation (Caterpillar) Building LL in East Peoria
.  River City had a contract with Caterpillar to fabricate and install tanks at Building LL.  By November 1995, River City had fabricated and installed the tanks and grating around the tanks, but had failed to install temporary or permanent hand railing as required by the contract.  Modugno's work required use of the grating to access his jobsite.  While Modugno was on the grating, he lost his balance and fell a distance of 20 feet to the ground, sustaining serious injuries.  Cincinnati alleges that River City knew that workers were using the grating around the tanks prior to Modugno's fall
.  

At the time of the accident, Auto-Owners 
provided general liability insurance coverage for River City, and Cincinnati provided general liability insurance coverage for Illinois Piping.  River City was named as an additional insured under Illinois Piping's policy.  Caterpillar was named as an additional insured under both policies.  

In November 1997, Cincinnati settled with Modugno for $541,422.12 for his injuries.  Modugno's wife received $25,000 for damages she sustained as a result of her husband's injuries.  As a result of the settlement, the Modugnos signed releases waiving all claims against Caterpillar, Illinois Piping, and Cincinnati, as well as all claims against River City and Auto-Owners. 

In November 1999, Cincinnati filed a two-count complaint against River City and Auto-Owners.  Count I asserted a subrogation action on behalf of Caterpillar against River City pursuant to the Illinois Joint Tortfeasor Contribution Act (740 ILCS 100/0.01 
et seq
. (West 2000)), requesting contribution from River City based on its 
pro rata 
share of the liability.  
Count II asserted a direct action by Cincinnati against Auto-Owners for equitable contribution.  In this count, Cincinnati requested that a determination be made as to Caterpillar's proportionate share of liability and that Auto-Owners be ordered to reimburse Cincinnati for 50% of such amount.

River City filed a section 2--619 (735 ILCS 5/2--619 (West 2000)) motion to dismiss count I, arguing that since River City was named as an additional insured under Cincinnati's policy with Illinois Piping, it was not subject to Cincinnati's subrogation claim.  River City also filed a section 2--615 (735 ILCS 5/2--615 (West 2000)) motion to dismiss, arguing that count I failed to state a cause of action because it did not specify the amount paid by Caterpillar in excess of its 
pro rata 
share of liability. 

Auto-Owners filed a section 2--619 motion to dismiss count II arguing that Cincinnati could not maintain an action for equitable contribution because Cincinnati's and Auto-Owners' policies did not insure the same risk and because Cincinnati failed to segregate the settlement amounts.
  

Cincinnati obtained and filed deposition testimony from River City officials John Hoelscher,
 chief financial officer, and Joseph West
, a former vice president of customer accounts.  Cincinnati also filed affidavits from Jeff Lewis
, Illinois Piping's owner and president, and from Peter Coyle of Coyle Insurance Agency.  Coyle was responsible for procuring the Cincinnati policy issued to Illinois Piping.  

In his deposition, Hoelscher said that when Illinois Piping is a subcontractor of River City, Illinois Piping must include River City as an additional insured.  However, according to Hoelscher, when there is no written subcontract between River City and Illinois Piping, then Illinois Piping is not required to provide any insurance to River City.  Hoelscher conceded that at the time of Modugno's fall, there was no contractual relationship between River City and Illinois Piping regarding the work at Building LL.  
In his deposition, West stated that there was no contractual relationship between River City and Illinois Piping at Building LL.  West indicated that Hoelscher was charged with the duty of ensuring that the proper insurance was in place for River City.  In his affidavit, Coyle indicated that it was his understanding when he wrote the Cincinnati policy that the additional insured status for River City would only apply when River City had a contractual relationship with Illinois Piping on a construction project.  According to Lewis' affidavit, Illinois Piping had subcontracts with River City at various work sites, but was not River City's subcontractor at Building LL at the time of Victor Modugno's fall. 

The circuit court found the endorsement adding River City as an additional insured to be clear and unambiguous and not subject to interpretation by parol evidence.  Stating that it agreed with the defendants' positions, the court then entered an order dismissing counts I and II of the complaint with prejudice pursuant to section 2--619.  735 ILCS 5/2--619 (West 2000).  Cincinnati now appeals.

ANALYSIS

A section 2--619 dismissal resembles the grant of a summary judgment motion; thus, we conduct a 
de novo 
review and consider whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal was proper as a matter of law.  
Epstein v. Chicago Board of Education
, 178 Ill. 2d 370, 383, 687 N.E.2d 1042, 1049 (1997).  First, we will consider Cincinnati's claim against River City and then its claim against Auto-Owners.

I.  River City

In count I of its complaint, Cincinnati, as the subrogee of Caterpillar, seeks contribution from River City according to the Joint Tortfeasor Contribution Act (740 ILCS 100/2 (West 2000)).  In defense, River City notes the general rule that an insurer may not subrogate against its own insured or any person or entity having the status of a co-insured under the policy.  See 
Dix Mutual Insurance Company v. La Framboise
, 149 Ill. 2d 314, 323, 597 N.E.2d 622, 626 (1992).  River City argues that Cincinnati is barred from seeking contribution from River City because River City is a co-insured under Illinois Piping's insurance policy with Cincinnati.  The policy at issue included an additional insured endorsement which provides:  

"WHO IS AN INSURED (Section II) is amended to include 

as an insured the person or organization shown in the Schedule as an insured but only with respect to liability 

arising out of your [Illinois Piping's] operations or       premises owned by or rented to you [Illinois Piping]."

The policy included additional insured endorsements for 18 different entities of which River City was one.  Consequently, River City argues that Cincinnati cannot seek contribution since River City is a co-insured.
 

To counter this argument, Cincinnati offered extrinsic evidence to establish that the additional insured endorsement did not apply to the instant claim.  Specifically, Cincinnati asked the trial court to consider the depositions from two River City officers, as well as affidavits from the insurance broker who procured the Cincinnati policy for Illinois Piping and from the principal of Illinois Piping. 

In dismissing Cincinnati's complaint, the trial court applied the traditional "four corners" rule of contract interpretation.  This rule provides that "[a]n agreement, when reduced to writing, must be presumed to speak the intention of the parties who signed it.  It speaks for itself, and the intention with which it was executed must be determined from the language used.  It is not to be changed by extrinsic evidence."  
Western Illinois Oil Co. v. Thompson
, 26 Ill. 2d 287, 291, 186 N.E.2d 285 (1962).  The trial court's decision to exclude parol evidence is reviewed for an abuse of discretion.  See 
McDonald's Operators Risk Management Ass'n v. Coresource, Inc.
, 307 Ill. App. 3d 187, 194, 717 N.E.2d 485, 491, (1999).
  

The strict application of the "four corners" rule continues to find support in the Illinois Appellate Court.  
See, 
e.g.
,
 Bonnie Owen Realty, Inc. v. Cincinnati Insurance Co.
, 283 Ill. App. 3d 812, 820, 670 N.E.2d 1182, 1187 (5th Dist. 1996).  However, this court has adopted the "provisional approach" to contract interpretation, which allows the court to provisionally consider parol evidence to determine if an agreement that appears to be clear on its face is actually ambiguous.  
Ahsan v. Eagle, Inc.
, 287 Ill. App. 3d 788, 790, 678 N.E.2d 1238, 1241 (1997). 
 In 
Ahsan
 we stated: "[T]he 'four corners' rule has two flaws: it assumes precision in language that cannot exist, and it requires the judge to determine the true intent of the parties in a transaction that is removed in time and circumstance."  
Ahsan
, 287 Ill. App. 3d at 790, 678 N.E.2d at 1240.  Other districts of the Illinois Appellate Court have also applied the "provisional" approach to contract interpretation.  See 
USG Corp. v. Sterling Plumbing Group, Inc.
, 247 Ill. App. 3d 316, 318, 617 N.E.2d 69, 71 (1st Dist. 1993); 
Riney v. Weiss & Neuman Shoe Co.
, 217 Ill. App. 3d 435, 443, 577 N.E.2d 505, 510 (4th Dist. 1991).  Moreover, in 
Dungey v. Haines & Britton, Ltd.
, 155 Ill. 2d 329, 614 N.E.2d 1205 (1993), our supreme court examined the evidence to determine whether a latent ambiguity existed in an automobile policy that was not ambiguous on its face.  The court stated: "'What at first blush might appear unambiguous in the insurance contract might not be such in the particular factual setting in which the contract was issued.'"  
Dungey
, 155 Ill. 2d at 336, 614 N.E.2d at 1209, quoting 
Glidden v. Farmers Automobile Insurance Ass'n
, 57 Ill. 2d 330, 336, 312 N.E.2d 247, 250 (1974)

The supreme court declined to formally adopt the provisional approach in 
Air Safety Inc. v. Teachers Realty Corp.
, 185 Ill. 2d 457, 706 N.E.2d 882 (1999), because the contract in that case included an explicit integration clause in the contract, which provided that the "'[c]ontract represents the entire and integrated agreement between the parties hereto and supersedes all prior negotiations, representations, or agreements, either written or oral.'"  
Air Safety
, 185 Ill. 2d at 460, 706 N.E.2d at 883.    

River City argues that the "Changes" clause in the Illinois Piping policy also includes an express integration clause.  This clause provides:

"
B. CHANGES

This policy contains all the agreements between you [Illinois Piping] and us [Cincinnati] concerning the insurance afforded.  The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent.  This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy."  
  

The Changes clause in the instant policy is distinctly different from the integration clause in 
Air Safety 
because it does not express the parties' intent to establish the contract as their entire and integrated agreement superceding all other agreements.  Rather, the Changes clause prevents unilateral modifications of the policy.  

In 
Air Safety
, the court explained that "[t]he integration clause makes clear that the negotiations leading to the written contract 
are not
 the agreement."  (Emphasis in original.)
  
Air Safety
, 185 Ill. 2d at 464, 706 N.E.2d at 885.
  The Changes clause, on the other hand, addresses the circumstances under which the instant policy can be amended after it was issued.  Because we conclude that the instant policy does not contain an explicit integration clause, the policy does not manifest the parties' agreement to preclude a court from considering extrinsic evidence to determine the existence of a latent ambiguity.

Accordingly, we hold that the circuit court erred in declining to provisionally evaluate extrinsic evidence to determine whether it revealed any latent ambiguities in the insurance contract.  However, such evidence must have an indicia of reliability.  The parties are entitled to only present to the court objective evidence, 
i.e.
, evidence that cannot be fabricated and that can be supplied by disinterested third parties.  See 
Ahsan
, 287 Ill. App. 3d at 791, 678 N.E.2d at 1241.  Objective evidence also includes any admissions of an adverse party.

Applying this standard, the court should have provisionally considered the admissions of the two River City officials, Hoelscher and West.  They admitted in their depositions that Illinois Piping was not contractually obligated to provide coverage to River City for the work performed by River City at Building LL.  However, such evidence does not establish a latent ambiguity in the insurance contact at issue, because it sheds no light on the question of whether Illinois Piping had nonetheless contracted with Cincinnati for River City's status as an additional insured for liability arising out of Illinois Piping's operations at Building LL.  Although Cincinnati argues that the endorsement should be limited to situations in which Illinois Piping is acting as a subcontractor for River City, no such limitation is included in the endorsement.  Because Cincinnati did not offer 
objective
 extrinsic evidence demonstrating any latent ambiguity in the policy, the circuit court's refusal to provisionally consider the extrinsic evidence offered by Cincinnati in this instance was harmless error.  For the reasons stated, we affirm the circuit court's dismissal of count I of Cincinnati's complaint.    

II. Auto-Owners

In count II of its complaint, Cincinnati seeks equitable contribution from Auto-Owners for Caterpillar's proportionate share of liability.  The right to equitable contribution arises when one insurer pays money for the benefit of another insurer.  
Royal Globe Insurance Co. v. Aetna Insurance Co.
, 82 Ill. App. 3d 1003, 1006, 403 N.E.2d 680, 683 (1980).  
The doctrine of equitable contribution permits an insurer that has paid the entire loss to be reimbursed by other insurers that are also liable for the loss.  
Liberty Mutual Insurance Co. v. Westfield Insurance Co.
, 301 Ill. App. 3d 49, 52, 703 N.E.2d 439, 441 (1998).  
In order for the settling insurer to recover in an action for equitable contribution, the policies must cover a risk on the same basis and there must be identity between the policies as to parties and insurable interests and risks.
  Aetna Casualty & Surety Co. v. James J. Benes & Associates, Inc.
, 229 Ill. App. 3d 413, 417, 593 N.E.2d 1087, 1090 (1992).

The Cincinnati insurance policy provided coverage to Illinois Piping and to Caterpillar as a co-insured for liability arising out of Illinois Piping's operations.  The Auto-Owners' insurance policy provided coverage to River City and to Caterpillar as a co-insured for liability arising out of River City's work.  Victor Modugno was injured while performing work for Illinois Piping on grating erected by River City.  Modugno's claim against Caterpillar is based upon the alleged failure of its subcontractor River City to erect hand rails.  
Since both policies insured against Caterpillar's liability for the same risk, there is sufficient identity of insurable interests to support equitable contribution for the settlement paid by Cincinnati on behalf of Caterpillar.  

However, Auto-Owners points out that the policies have different sets of insureds and argues that the decision in 
Schal Bovis, Inc. v. Casualty Insurance Co.
, 315 Ill. App. 3d 353, 732 N.E.2d 1179 (2000), supports its argument that Cincinnati cannot seek equitable contribution from Auto-Owners because there is not an identity of risks insured.  

While it is well established that excess insurers cannot seek equitable contribution from primary insurers, the court in 
Schal Bovis
 extended this rule of law, reasoning that a primary insurer cannot seek equitable contribution from another primary insurer unless the coverage is substantially identical in all respects.  See 
Schal Bovis
, 315 Ill. App. 3d at 363, 732 N.E.2d at 1187.  Because the rule in 
Schal Bovis
 would unfairly protect Auto-Owners from paying for the benefit it received -- release from liability -- 
we refuse to follow 
Schal Bovis
.  The Cincinnati policy insures Caterpillar for liability arising out of Illinois Piping's operations, and the Auto-Owners policy insures Caterpillar for liability arising out of River City's work.  Cincinnati settled the Modugnos' claim against Caterpillar and paid out insurance proceeds for Cincinnati's benefit and for the benefit of Auto-Owners.  While the Auto-Owners and Cincinnati policies have different sets of insureds, Caterpillar was insured for Modugno's injuries under both policies.  
Consequently, dismissal of Cincinnati's claim for equitable contribution was error. 

Auto-Owners next argues that Cincinnati should be barred from seeking contribution because it failed to differentiate between worker's compensation and personal injury awards within the settlement with Modugno.  A plaintiff in contribution must plead and offer evidence of the amount he paid to the injured party, along with evidence of the joint tortfeasor's fault, so that the fact finder has a basis for determining what, if any, amount was paid by plaintiff over and above his fair share of the joint liability.  
Victory Memorial Hospital Ass'n v. Schmidt, Garden & Erickson
, 158 Ill. App. 3d 931, 935, 511 N.E.2d 953, 956 (1987).  However, in 
Hall v. Archer-Daniels-Midland Co.
, 122 Ill. 2d 448, 459-61, 524 N.E.2d 586, 591-92 (1988), the court held that Archer-Daniels-Midland (ADM) was not prohibited from seeking contribution although it failed to segregate compensatory damages from punitive damages (sought in the complaint against ADM only) within the settlement.  The court reasoned that the settlement was in good faith and whether the plaintiff had paid in excess of its 
pro rata
 share could be appropriately decided by a jury.  
Hall
, 122 Ill. 2d at 461, 524 N.E.2d at 592.  As in  
Hall
, the settlement in this case appears to have been made in good faith and a jury should have the opportunity to determine Caterpillar's proportionate share of liability.

CONCLUSION

The judgment of the circuit court of Tazewell County dismissing count I is affirmed.  The judgment of the circuit court dismissing count II is reversed.  The case is remanded for further proceedings in accordance with this opinion.

Affirmed in part and reversed in part; cause remanded.

HOLDRIDGE and SLATER, J.J., concurred.