HOME INSURANCE COMPANY, as the Successor in Interest to Home Indemnity Company, Plaintiff-Appellant, v. CINCINNATI INSURANCE COMPANY, Defendant-Appellee.

First District (3rd Division) No. 1—02—2956

Opinion filed December 3, 2003.

Pretzel & Stouffer, of Chicago (Robert Marc Chemers and Daniel G. Willis, of counsel), for appellant.

Litchfield Cavo, of Chicago (Mitchell H. Frazen and Alexis Hawker, of counsel), for appellee.

PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:

In this declaratory judgment action, the plaintiff, Home Insurance

Company (Home), appeals from a circuit court order granting summary judgment in favor of the defendant, Cincinnati Insurance Company (Cincinnati), and denying its cross-motion for summary judgment. For the reasons that follow, we affirm.

The facts giving rise to this litigation are substantially undisputed. Allied Asphalt Paving Company (Allied) was the general contractor for a renovation project on the Kennedy Expressway in Chicago commissioned by the State of Illinois. The renovation work was subcontracted to Aldridge Electric Company, Inc. (Aldridge), and Western Industries, Inc. (Western). On August 18, 1994, Matthew Fisher, an employee of Aldridge, was injured when he was struck by an automobile while installing lights in an underpass. At the time of the accident, the driver of the car was intoxicated, drove through the construction area and struck Fisher. Fisher filed suit against numerous parties, including Allied and Western, the safety subcontractor for the renovation project. In his third-amended complaint, Fisher alleged that Allied and Western had agreed to assume responsibility for all safety aspects of the project and agreed to follow all statutory and Illinois Department of Transportation directives to protect workers during construction. Fisher further alleged that Allied and Western breached their duty to, *inter alia,* provide proper safety signs, traffic cones, barricades, warning lights, flagmen, and other traffic control devices at the location where he was working.

At the time of the accident, Allied was named as an additional insured under two insurance policies. Cincinnati had issued a commercial general liability insurance policy to Western, naming Allied as an additional insured, with a $1 million limit of liability for each occurrence. Allied was also named as an additional insured under a policy issued to Aldridge by Home, with a $1 million limit of liability for each occurrence. Each policy contained the following endorsement:

> "WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of 'your work' for that insured by or for you."[1]

Further, under each policy, "your work" was defined as:

> "a. Work or operations performed by you or on your behalf; and
> b. Materials, parts or equipment furnished in connection with such work or operations."

Allied tendered the defense of the Fisher action to both Cincinnati

---

[1]Although the schedules contained in the copies of the insurance policies included in the record on appeal do not reflect Allied's name, both parties represent that Allied was listed in each policy's schedule as an additional insured.

and Home. In a letter dated June 23, 1997, Cincinnati informed Richard Johnson, Allied's attorney, that it was accepting the defense, but would be reserving its rights to deny coverage with respect to any work or conduct that was not performed by Western on behalf of Allied.

In a letter dated September 14, 1999, addressed to Johnson, Home agreed to accept the defense of Allied. The letter also stated: "We [Home] will agree to share the cost of Allied's defense and indemnity with the insurance carrier for Western Industries on a 50/50 basis subject to a review of both policies and any reservation of rights."

About six to eight months before the Fisher trial commenced in October 1999, Cincinnati settled Fisher's claim against Western for $40,000. After the trial in the Fisher action commenced, Fisher agreed to settle his suit against Allied for $600,000. Home paid $500,000, and Cincinnati paid $100,000 of the settlement amount.

On November 8, 2000, Home filed the instant declaratory judgment action against Cincinnati, asserting theories of equitable subrogation and equitable contribution. In count I of the complaint, Home sought a declaration that Cincinnati was the sole primary insurance carrier responsible for the defense of Allied in the Fisher action and, thus, was liable to Home for the entire amount Home paid toward the settlement. In count II, Home sought a declaration that it was entitled to recover from Cincinnati the amount it paid in excess of its *pro rata* share of the Fisher settlement.

In its answer to Home's complaint, Cincinnati raised three affirmative defenses. It alleged that: (1) Home waived any defenses to coverage by accepting Allied's defense without asserting a reservation of its rights; (2) Home was estopped from asserting for the first time in its declaratory judgment action that it was only an excess insurer as to Allied and, therefore, lacked any duty to defend or indemnify Allied against the claims in the Fisher action; and (3) Allied's settlement in the amount of $600,000 was "excessive and unreasonable."

Cincinnati and Home filed cross-motions for summary judgment. In support of and in opposition to their motions, Home and Cincinnati attached, *inter alia*, the depositions of Johnson, Allied's attorney, and David Cunningham, a claims superintendent for Cincinnati. Both Johnson and Cunningham testified as to their opinions about Western's potential liability in the Fisher action.

On August 20, 2002, the circuit court entered a written order granting Cincinnati's motion for summary judgment and denying Home's cross-motion. The circuit court found, *inter alia*, that: (1) Cincinnati was Allied's primary insurer while Home was the excess insurer; (2) Home was not entitled to equitable contribution from

Cincinnati because excess and primary insurers do not insure the same risks; and (3) Home waived any defenses to coverage because it did not assert that it had no duty to defend Allied or that it was an excess insurer until filing its declaratory judgment action. Home now appeals.

■ Summary judgment is appropriate where the pleadings, depositions, admissions, and affidavits on file, when taken together in the light most favorable to the nonmovant, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 2000). Where the parties have filed cross-motions for summary judgment, they agree that no genuine issue as to any material fact exists and that only a question of law is involved, and they invite the court to decide the issues based on the record. *Tri-State Coach Lines, Inc. v. Metropolitan Pier & Exposition Authority*, 315 Ill. App. 3d 179, 189, 732 N.E.2d 1137 (2000). Our review of the circuit court's ruling on a motion for summary judgment is *de novo. Morris v. Margulis*, 197 Ill. 2d 28, 35, 754 N.E.2d 314 (2001). We may affirm the circuit court's grant of summary judgment on any basis in the record, irrespective of whether the court relied on that ground. *Fabiano v. City of Palos Hills*, 336 Ill. App. 3d 635, 641, 784 N.E.2d 258 (2002).

We first address Home's contention that the circuit court erred in denying its motion for summary judgment and granting Cincinnati's cross-motion for summary judgment on count I of its complaint. In count I, Home sought to recover from Cincinnati under a theory of equitable subrogation. According to Home, Cincinnati provided Allied's primary insurance coverage and it provided only excess coverage. Home asserts that it had no obligation to pay anything until Cincinnati paid out the limits of its $1 million policy. It argues that, when Cincinnati refused to contribute more than $100,000 toward the settlement of Fisher's claim, it involuntarily paid the remaining $500,000, which it is now entitled to recover.

■ In the context of one insurer seeking reimbursement from another insurer, the prerequisites to recovery under a theory of equitable subrogation are: (1) the defendant carrier must be primarily liable to the insured for a loss under a policy of insurance; (2) the plaintiff carrier must be secondarily liable to the insured for the same loss under its policy; and (3) the plaintiff carrier must have discharged its liability to the insured and at the same time extinguished the liability of the defendant carrier. *State Farm General Insurance Co. v. Stewart*, 288 Ill. App. 3d 678, 686-87, 681 N.E.2d 325 (1997); *North American Insurance Co. v. Kemper National Insurance Co.*, 325 Ill. App. 3d 477, 481, 758 N.E.2d 856 (2001). One of the basic elements of

a claim for equitable subrogation by one carrier against the other is that both insurers must be liable to the insured for the same loss. See *Travelers Casualty & Surety Co. v. American Equity Insurance Co.*, 93 Cal. App. 4th 1142, 1157, 113 Cal. Rptr. 2d 613, 624 (2001) (in order to state a cause of action for equitable subrogation, the insurer must establish that it, in whole or in part, has compensated the insured for the same loss for which the party to be charged is liable). Consequently, we begin our analysis by addressing the issue of whether Home and Cincinnati were liable for the same loss.

As stated, Cincinnati insured Western and Home insured Aldridge under their respective policies. Allied was named as an additional insured under both policies. Specifically, the additional insured endorsement in the policies contained the following language:

> "WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of 'your work' for that insured by or for you."

"Your work" was defined under each policy as "[w]ork or operations performed by you or on your behalf."

In *Schal Bovis, Inc. v. Casualty Insurance Co.*, 315 Ill. App. 3d 353, 732 N.E.2d 1179 (2000), this court considered the effect that the language set forth above had on one insurer's right to recover equitable contribution from another insurer as a consequence of an amount paid in settlement of a claim against an entity that was an additional insured under policies issued by both carriers. In that case, a worker injured on a construction project sued MKDG/Buck 123 Partnership (Buck), the owner of the site, and Schal Bovis, Inc. (Schal), the general contractor, both of which were insured by Northbrook Property & Casualty Company (Northbrook). The injured worker also sued various other subcontractors, including Ozark Steel (Ozark), which was insured by Wausau Insurance Company (Wausau); Ranken Steel (Ranken), which was insured by Great American Insurance Company (Great American); Alcan United Concrete, Inc. (Alcan), which was insured by Casualty Insurance Company (Casualty); and Chicago Forming, Inc., which was insured by American States Insurance Company (American States). *Schal Bovis, Inc.*, 315 Ill. App. 3d at 358. Buck and Schal were named as additional insureds on each of the subcontractors' policies. The jury returned a verdict in favor of the worker and against Schal, Buck, and Ozark in the amount of $2.8 million. Great American, Wausau, and Northbrook, the excess insurer, satisfied the $2.8 million judgment and sought equitable contribution from Casualty and American States, both of which failed to pay any part of the judgment. The circuit court, *inter alia*, entered judgment

in favor of Casualty and American States on the claim. In affirming the judgment entered in favor of Casualty and American States, this court noted that, although Great American's policy covered Schal and Buck as additional insureds, it did so only to the extent that the liability of Schal and Buck arose out of Ranken's work. *Schal Bovis, Inc.*, 315 Ill. App. 3d at 363. Likewise, the Wausau policy covered Schal and Buck, but only with respect to liability which arose out of Ozark's work. *Schal Bovis, Inc.*, 315 Ill. App. 3d at 363. We stated:

> "Clearly, the risk that a plaintiff might be injured in connection with Ranken's work is a different risk than the risk that a plaintiff might be injured in connection with Ozark's work. These risks are, in turn, different than the risks associated with a plaintiff being injured in connection with Alcan's work or in connection with Chicago Forming's work (as is required by the Casualty and American States policies). Thus, because each insurer insured substantively different risks, each is precluded from seeking equitable contribution from the others." *Schal Bovis, Inc.*, 315 Ill. App. 3d at 363.

■ Although, in *Schal Bovis, Inc.*, we discussed the endorsement limiting the additional insured's liability in the context of a claim for equitable contribution, the analysis is equally relevant to Home's equitable subrogation claim in this case. Home was obligated to indemnify Allied only with respect to liability arising out of Aldridge's work, while Cincinnati was obligated to indemnify Allied only with respect to liability arising out of Western's work. The risk that a plaintiff might be injured in connection with Aldridge's work is a different risk than that associated with someone being injured in connection with Western's work. Consequently, since Home and Cincinnati were not liable to indemnify Allied for the same loss, Home is not entitled to equitable subrogation as a matter of law. For this reason, we affirm the circuit court's grant of summary judgment in favor of Cincinnati on count I of Home's complaint and the denial of summary judgment in favor of Home on the same count.

■ We now turn to the circuit court's order granting summary judgment in favor of Cincinnati on count II, Home's claim for equitable contribution. A co-insurer that has paid a loss is permitted to obtain partial reimbursement from other insurers that are also liable for the same loss (*Cincinnati Cos. v. West American Insurance Co.*, 183 Ill. 2d 317, 322, 701 N.E.2d 499 (1998)). In order for Home to succeed on its claim for equitable contribution, it would have to establish that it was a co-primary insurer with Cincinnati (see *Schal Bovis, Inc.*, 315 Ill. App. 3d at 361), as the right to contribution only arises among co-insurers.

■ As stated, in *Schal Bovis, Inc.*, this court held that, where each insurer insures substantively different risks, each is precluded from seeking equitable contribution from the other. *Schal Bovis, Inc.*, 315 Ill. App. 3d at 363. We have already concluded that, here, the risk that a plaintiff might be injured in connection with Aldridge's work is a different risk than that associated with someone being injured in connection with Western's work. For this reason, Home is precluded from seeking equitable contribution from Cincinnati. See *Schal Bovis, Inc.*, 315 Ill. App. 3d at 363.

We are mindful that the Third District of the Appellate Court in *Cincinnati Insurance Co. v. River City Construction Co.*, 325 Ill. App. 3d 267, 757 N.E.2d 676 (2001), declined to follow *Schal Bovis, Inc.* In that case, a worker employed by Illinois Piping Corporation (Illinois Piping) working at the Caterpillar Corporation (Caterpillar) building was injured. River City Construction Company (River City) had contracted with Caterpillar to install tanks at the building. At the time of the accident, Auto-Owners Insurance Company (Auto-Owners) insured River City, and Cincinnati Insurance Company (Cincinnati) insured Illinois Piping. *Cincinnati Insurance Co.*, 325 Ill. App. 3d at 269. Caterpillar was named as an additional insured under both the Cincinnati and Auto-Owners policies. Cincinnati paid Caterpillar's $541,422.12 settlement with the injured worker. In count II of Cincinnati's complaint, it sought equitable contribution from Auto-Owners for its proportionate share of liability. Auto-Owners filed a motion to dismiss count II, arguing, *inter alia*, that Cincinnati could not maintain an action for equitable contribution because the Cincinnati and Auto-Owners policies did not insure the same risk. The circuit court agreed and dismissed count II of Cincinnati's complaint. In reversing, the court held that, although the Cincinnati policy insured Caterpillar for liability arising out of Illinois Piping's operations, and the Auto-Owners policy insured Caterpillar for liability arising out of River City's work, following the rule stated in *Schal Bovis Inc.* would be inequitable because Cincinnati's payment of the settlement on behalf of Caterpillar benefitted both Cincinnati and Auto-Owners. *Cincinnati Insurance Co.*, 325 Ill. App. 3d at 275. The court in *Cincinnati Insurance Co.* appears to have held that, merely because Caterpillar was insured for workers' injuries under both policies, Cincinnati's settlement of Caterpillar's claim necessarily benefitted Auto-Owners without regard to whether both carriers were actually liable for the same underlying risk. We decline to adopt the court's reasoning in *Cincinnati Insurance Co.*, and reaffirm our holding in *Schal Bovis, Inc.*, that, in order to be entitled to equitable contribution, the plaintiff carrier and the defendant carrier must be co-insurers for the same underlying risk.

Even assuming *arguendo* that Home and Cincinnati insured the same underlying risk, Home still could not succeed on its claim for equitable contribution in this case. As noted earlier, both the Home and Cincinnati policies contained virtually identical standard "other insurance" provisions. Home's policy, however, contained an endorsement which modified the clause to provide excess coverage only. See *American States Insurance Co. v. Liberty Mutual Insurance Co.*, 291 Ill. App. 3d 336, 683 N.E.2d 510 (1997); *United States Fire Insurance Co. v. Aetna Life & Casualty*, 291 Ill. App. 3d 991, 684 N.E.2d 956 (1997). In Illinois, an excess insurer cannot seek equitable contribution from a primary insurer because excess and primary carriers insure different risks. See *Schal Bovis, Inc.*, 315 Ill. App. 3d at 363; *Home Indemnity Co. v. General Accident Insurance Co. of America*, 213 Ill. App. 3d 319, 321, 572 N.E.2d 962 (1991); *United States Fidelity & Guaranty Co. v. Continental Casualty Co.*, 198 Ill. App. 3d 950, 955, 556 N.E.2d 671 (1990). The rationale for such a holding is that the protections under an excess policy do not begin until those under a primary policy have been exhausted. *Home Indemnity Co.*, 213 Ill. App. 3d at 321. Therefore, even if both Home and Cincinnati could be said to insure Allied for the same loss, Home's status as an excess insurer precludes it from seeking equitable contribution from Cincinnati, a primary insurer. See *Schal Bovis, Inc.*, 315 Ill. App. 3d at 363.

For the foregoing reasons, we find that the circuit court properly granted summary judgment in favor of Cincinnati on count II of Home's complaint, and denied summary judgment in favor of Home.

In summary, we affirm the circuit court's grant of summary judgment in favor of Cincinnati and against Home on both counts of Home's complaint and the denial of Home's motion for summary judgment on the same counts.

Affirmed.

KARNEZIS, J., concurs.

JUSTICE HALL, dissenting:

I respectfully dissent. I believe that the elements of equitable subrogation have been met. Where an insurer seeks reimbursement from another insurer under a theory of equitable subrogation, the insurer must establish that: (1) the defendant insurer is primarily liable to the insured under a policy of insurance; (2) the insurer is secondarily liable to the insured under an insurance policy; and (3) the insurer paid the insured under that policy, thereby extinguishing the debt of the defendant insurer. *State Farm General Insurance Co. v. Stewart*, 288 Ill. App. 3d 678, 686-87, 681 N.E.2d 625 (1997).

Here, the first and second elements are satisfied since it is undisputed that the Home policy is excess and the coverage of the Cincinnati policy is primary as to Allied. The third and final element is satisfied since Home paid $500,000 of the $600,000 settlement, thereby extinguishing the debt owed by Cincinnati, even though Cincinnati's policy was primary.

The majority, however, maintains that pursuant to the analysis set forth in *Schal Bovis, Inc. v. Casualty Insurance Co.*, 315 Ill. App. 3d 353, 732 N.E.2d 1179 (2000), since Home and Cincinnati were not liable to indemnify Allied for the same loss, Home is not entitled to equitable subrogation as a matter of law. I disagree. In *Schal Bovis*, the reviewing court discussed the endorsement limiting the additional insured's liability in the context of a claim for equitable contribution, not equitable subrogation.

The equitable subrogation and equitable contribution doctrines both pertain to the allocation of costs when there is more than one potentially responsible insurance company, but the two doctrines are based upon "entirely different" concepts. *Maryland Casualty Co. v. Nationwide Mutual Insurance Co.*, 81 Cal. App. 4th 1082, 1088, 97 Cal. Rptr. 2d 374, 377 (2000), citing *Fireman's Fund Insurance Co. v. Maryland Casualty Co.*, 65 Cal. App. 4th 1279, 1293, 77 Cal. Rptr. 2d 296, 303 (1998). Equitable contribution applies to apportion a loss among insurers that cover the same risk, so that each pays its fair share and one does not profit at the expense of the others. *Fireman's Fund*, 65 Cal. App. 4th at 1296, 77 Cal. Rptr. 2d at 306. Conversely, "[e]quitable subrogation allows an insurer that paid coverage or defense costs to be placed in the insured's position to pursue a full recovery from another insurer who was primarily responsible for the loss." *Maryland Casualty Co.*, 81 Cal. App. 4th at 1088, 97 Cal. Rptr. 2d at 377. Where different insurers cover different risks and liabilities with respect to the same insured, they may proceed against each other for reimbursement by equitable subrogation rather than equitable contribution. *Atlantic Mutual Insurance Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1043-44, 123 Cal. Rptr. 2d 256, 276-77 (2002); *Travelers Casualty & Surety Co. v. American Equity Insurance Co.*, 93 Cal. App. 4th 1142, 1151, 113 Cal. Rptr. 2d 613, 619-20 (2001). Based upon these principles, I would reverse the summary judgment entered in favor of Cincinnati on count I (equitable subrogation claim) of Home's complaint.