# In the
# United States Court of Appeals
## For the Seventh Circuit
_____

No. 04-2114

LYNN A. JOY,

*Plaintiff-Appellant,*

v.

HAY GROUP, INC.,

*Defendant-Appellee.*

_____

Appeal from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 02 C 4989—**Ronald A. Guzmán**, *Judge.*

_____

ARGUED FEBRUARY 11, 2005—DECIDED APRIL 8, 2005

_____

Before BAUER, POSNER, and KANNE, *Circuit Judges.*

POSNER, *Circuit Judge.* Lynn Joy, the plaintiff in this diversity breach of contract suit governed by Illinois law, appeals from the grant of summary judgment in favor of the defendant, a consulting firm named Hay Group, Inc. (HGI). Joy is a former employee of HGI, and her principal claim is that her employment contract entitled her to one year's base salary (which was $210,000) if she was terminated, provided she was terminated "for reasons other than cause," a word not defined in the contract. Because of the procedural

posture of the case, we state the facts as favorably to Joy as the record will permit, without vouching for their truth.

Before going to work for HGI, Joy had worked for Hewitt Associates, consulting on executive compensation. Her principal supervisor at Hewitt was named Bassick. In 1996, HGI hired Bassick to create an executive-compensation consulting practice, and he wanted to take Joy with him to HGI, which agreed and drafted the employment contract that we quoted. When he saw the draft, Bassick asked Lacey, a senior manager at HGI, what "cause" meant and Lacey—who in fact had drafted the contract—replied that it meant serious wrongdoing. Bassick conveyed this message to Joy and also told her that she wouldn't have to bring in new business because HGI had plenty of clients; what it needed was to be able to supply their demand for advice on executive compensation.

Bassick supervised Joy throughout her employment by HGI and considered the quality of her work excellent. Nevertheless in 2002 HGI terminated Joy "for cause" and therefore refused to give her severance pay. The reason for the termination was that in 2000 she had been given a quota of $398,000 in annual billings to clients and had failed to meet it.

HGI argues that the contractual term "cause" is unambiguous and that the testimony of Lacey and Bassick is ineligible to create an ambiguity because it is not "objective" evidence. The district court agreed and added that the word "cause" clearly covered the ground on which Joy was fired because one of the dictionary definitions of the word is "a reason, motive, or ground for some action." That reasoning is untenable; HGI doesn't even try to defend it. The contract itself contrasts "reasons" and "cause." Reasons other than cause are explicitly *not* a ground for denial of severance pay. The judge's interpretation implies that if HGI had fired Joy

because she was a woman, she would have been fired for cause and thus entitled to no severance pay, because there would have been a reason for firing her—her sex. The judge's error was to pick from among the several meanings of "cause" one that was inapplicable. Dictionaries give a range of linguistic possibilities; rarely do they help a court decide which one the drafter of the contract or statute in question intended; here, the contract actually excluded the judge's choice.

HGI's position is more plausible; it is that the word "cause" in Joy's employment contract unambiguously denotes unsatisfactory performance as judged by HGI. Cases have upheld discharges on the basis of such an interpretation of "cause." *Vandevier v. Mulay Plastics, Inc.*, 482 N.E.2d 377, 381-82 (Ill. App. 1985); *Geier v. Medtronic, Inc.*, 99 F.3d 238, 243-44 (7th Cir. 1996) (Illinois law); *Weir v. Anaconda Co.*, 773 F.2d 1073, 1080-81 (10th Cir. 1985). But there may be a difference between "cause" for discharge and "cause" for denial of severance pay. Business firms almost always reserve the right to fire an employee (unless the employee is protected by a collective bargaining agreement) if the firm decides that the employee's performance is unsatisfactory. But it is precisely because of the insecurity of such employment—the determination that Joy's performance was unsatisfactory was based on a criterion selected by the firm after she went to work for it, rather than being specified in her employment contract—that employment contracts often provide for severance pay. Joy was leaving a good job to go to work for HGI and in doing so may have been taking a risk (though, with her mentor leaving Hewitt, maybe there would have been a risk in her remaining there), especially since she was going to be working in what was a new line of business for HGI. If she lost her job she would need money to tide her over while she looked for a new job.

Hence the severance-pay provision in her employment contract with HGI.

Of course if she were fired because she embezzled funds from HGI or engaged in other wrongful behavior, or refused to show up for work, or played videogames on her office computer for hours at a time, HGI would have no obligation to give her severance pay. Any of those examples would be a case of "constructive resignation," where to obtain a benefit conditional on being discharged, such as severance pay, an employee engages in conduct intended to force her employer to fire her. *Bean v. Wisconsin Bell, Inc.*, 366 F.3d 451, 454-55 (7th Cir. 2004); *Fekete v. City of East St. Louis*, 145 N.E. 692, 694 (Ill. 1924); *Wrighten v. Metropolitan Hospitals, Inc.*, 726 F.2d 1346, 1351 (9th Cir. 1984); *Dies v. City & County of Denver*, 483 P.2d 378, 379-80 (Colo. 1971). HGI doesn't argue that Joy was trying to quit and walk off with severance pay. What it argues is that the only situation in which firing Joy would not have been for cause would have been if a decline in business had required laying off workers. So narrow an interpretation would leave Joy unprotected in the common situation in which, because the new employee does not make a satisfactory adjustment to her new job, the employer is dissatisfied with her performance and fires her. It is uncertain whether an exception for "cause" to a contractual right to severance pay would extend to that situation. The precise meaning that the word bears in the contract cannot be determined just from reading the contract, as HGI argues. It is a considerable irony that a firm that is in the business of consulting on executive compensation failed to draft a contract that clearly specified the compensation rights of one of its own executives.

For completeness we note that even if a contract is clear "on its face"—which is to say, even if someone who knew nothing of the contract's background or commercial context

would think its meaning clear—extrinsic evidence, which is to say evidence besides just the written contract itself, is admissible to demonstrate that the contract may not mean what it says, provided the evidence used to show this is "objective" in the sense of not being merely self-serving, unverifiable testimony. *Cincinnati Ins. Co. v. River City Construction Co.*, 757 N.E.2d 676, 681 (Ill. App. 2001), overruled on other grounds by *Home Ins. Co. v. Cincinnati Ins. Co.*, 821 N.E.2d 269 (Ill. 2004); *Ahsan v. Eagle, Inc.*, 678 N.E.2d 1238, 1241 (Ill. App. 1997); *Mathews v. Sears Pension Plan*, 144 F.3d 461, 466-67 (7th Cir. 1998); *Kerin v. U.S. Postal Service*, 116 F.3d 988, 992 n. 2 (2d Cir. 1997); *Duquesne Light Co. v. Westinghouse Electric Corp.*, 66 F.3d 604, 614 (3d Cir. 1995). The proviso is important. Bassick and Lacey are not disinterested witnesses. Neither is employed any longer by HGI; Bassick has sued HGI; and Lacey left because of disagreements with management. Testimony by disgruntled former employees is not the kind of evidence that may be used to establish that a seemingly clear contract actually is ambiguous. The examples that we and other courts have given of the kind of evidence that is sufficiently "objective" to be allowed to upend the "four corners" rule do not include evidence given by former employees. See, besides the cases cited earlier, *AM International, Inc. v. Graphic Management Associates, Inc.*, 44 F.3d 572, 575 (7th Cir. 1995) (Illinois law); *Bristow v. Drake Street Inc.*, 41 F.3d 345, 352 (7th Cir. 1994) (same); *Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 295 (2d Cir. 1999); *Charter Oil Co. v. American Employers' Ins. Co.*, 69 F.3d 1160, 1167-69 (D.C. Cir. 1995).

But the present case is not one in which the written contract appears to have a clear meaning and dubious evidence is presented in an effort to blur that meaning. When as in this case the written contract is unclear, *any* evidence admissible under the rules of evidence is usable to establish

the contract's meaning. The cases do not actually say this; but when they rule that because a contract is ambiguous extrinsic (or parol) evidence of its meaning is admissible, they don't place any special restrictions on admissibility. See, e.g., *Farm Credit Bank v. Whitlock*, 581 N.E.2d 664, 667 (Ill. 1991); *WestPoint Marine, Inc. v. Prange*, 812 N.E.2d 1016, 1019 (Ill. App. 2004); *Dell Computer Corp. v. Rodriguez*, 390 F.3d 377, 388 (5th Cir. 2004); *NILAC Int'l Marketing Group v. Ameritech Services, Inc.*, 362 F.3d 354, 359 (6th Cir. 2004). So Joy is entitled to a trial at which she can call Bassick and Lacey as witnesses. Whether they will be believed is, of course, another matter.

But we agree with the district judge, and for the reasons he gave (to which we have nothing to add), that her further claim—to a bonus—has no merit. The judgment is therefore affirmed in part and reversed in part, and the case is remanded to the district court for further proceedings consistent with this opinion

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*