2021 IL App (1st) 192364-U

SIXTH DIVISION
June 4, 2021

No. 1-19-2364

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| ECONOMY PREMIER ASSURANCE COMPANY, individually, and as subrogee of BRENT YORDY, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | Case No. 16 CH 16402 |
| COUNTRY MUTUAL INSURANCE COMPANY, | ) ) ) | Honorable Sanjay T. Tailor Judge, Presiding. |
| Defendant-Appellee. | ) ) | |

JUSTICE CONNORS delivered the judgment of the court.
Presiding Justice Mikva and Justice Harris concurred in the judgment.

**ORDER**

¶ 1    *Held:*    The circuit court's order that granted defendant's motion for summary judgment and denied plaintiff's motion for partial summary judgment was proper where defendant had no duty to indemnify its insured with respect to the underlying complaint and therefore plaintiff was not entitled to recover against defendant on its subrogation or unjust enrichment claims; affirmed.

¶ 2    This appeal stems from a personal injury case filed against Dan Yordy, who had an insurance policy with Plaintiff, Economy Premiere Insurance Company, and Dan's son Brent Yordy, who had an insurance policy with Defendant, Country Mutual Insurance Company. Dan

and Brent settled with Dale Green, the plaintiff in the underlying personal injury case, and pursuant to the agreement, Economy agreed to pay Green on behalf of both Dan and Brent. Thereafter, Economy, individually, and as a subrogee of Brent, filed a complaint for a declaratory judgment against Country in which it sought to recover the amount of the settlement it paid on behalf of Brent. Economy now appeals from the circuit court's order that denied Economy's motion for partial summary judgment on its complaint for declaratory judgment against Country and granted Country's motion for summary judgment. On appeal, Economy argues that the circuit court should not have granted summary judgment in favor of Country because Country, not Economy, had a duty to indemnify Brent. Economy argues that therefore it is entitled to recover from Country under the principles of subrogation and the doctrine of unjust enrichment. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4                                    Underlying Case

¶ 5        In October 2011, Dale Green filed a personal injury complaint against Dan, Brent, Pioneer Hi-Bred International, Inc. (Pioneer), Yordy Farms, and R.N. Yordy Co., Inc. The complaint alleged as follows. In November 2009, while Green was running alongside a road, he was struck and injured by a "wheeled auger" that had separated from Dan's truck while Dan was transporting it to another farm.[1] Before the accident, Brent had attached the conveyor to Dan's truck and, in doing so, failed to properly secure it to the truck. Pioneer leased the conveyor that was attached to Dan's truck to Dan and Brent and the agreement provided that Pioneer was responsible for transporting it between farms.

---

[1] Green's complaint identified the machine as a "wheeled auger." In Economy's complaint for declaratory judgment at issue here, Economy notes that "[w]hat the [underlying complaint] described as an 'auger' was actually a grain belt conveyor" and that "[t]he distinction is immaterial for the purposes of this dispute." In Brent and Dan's deposition testimonies in the underlying case, they identified the machine as a "belt conveyor" and "conveyor" and in Economy's appellant brief, it refers to it as a "conveyor." We will therefore identify the machine as a "conveyor" throughout this order.

¶ 6      In February 2012, Economy sent Brent a reservation of rights letter. The letter stated as follows. Economy issued a personal automobile policy to Dan and Leona Yordy, which was effective from April 9, 2009, to April 10, 2010, and listed the truck Dan was driving on the date of the accident as one of the insured vehicles. Economy offered to defend Brent in the underlying personal injury matter under a "complete reservation of rights", which stated, *inter alia*, as follows:

> "Based on the terms and definitions described above, as compared to the allegations in the underlying complaint, the policy potentially provides for your coverage. However, Economy has learned facts in investigation which, if true, may preclude its duty to indemnify you against the underlying complaint. For example, you did not prepare the auger for towing until well before the auger was actually towed on the date of loss. Moreover, you did not intend to use Dan's auto to tow the auger. In sum, while the underlying complaint may trigger the duty to defend, the policy may not ultimately cover you against the claims made by Green."

¶ 7      In July 2016, Green, Dan, and Brent entered into a settlement agreement whereby Green released all claims against Dan and Brent in consideration of $132,000 to be paid by or on behalf of Brent and $33,000 to be paid by or on behalf of Dan. The agreement provided that the payment of the settlement funds to Green would be made by Economy on behalf of Dan and Brent, with Economy making a payment of $132,000 on behalf of Brent and a payment of $33,000 on behalf of Dan. Green dismissed the claims against defendants Yordy Farms, and R.N. Yordy Co., Inc., pursuant to an agreed order, and he proceeded to trial on the claims against Pioneer.

¶ 8                          Complaint for Declaratory Judgment

¶ 9      In December 2016, Economy filed the complaint for declaratory judgment at issue and alleged as follows. In October 2011, Green filed a personal injury complaint against Brent and his

father Dan, which alleged that on November 28, 2009, the date of the accident, Brent attached the conveyor to Dan's pickup truck, Dan towed the conveyor to deliver it to another farm, and the conveyor came loose from Dan's truck and struck Green. In February 2012, Economy agreed to defend Brent under a reservation of rights, "on the basis that he was at least potentially 'using' Dan's truck, because the underlying complaint alleged that Brent connected the conveyor to Dan's pickup truck with Dan's permission, and Economy was required to accept this allegation as true for purposes of the duty to defend." Economy alleged in its complaint for declaratory judgment that in its reservation of rights letter, it had "specifically disclaimed a duty to indemnify Brent should subsequent facts lead to a conclusion that Brent was not 'using' Dan's truck and, therefore, was not covered by the Economy policy."

¶ 10       Economy further alleged in its complaint that Brent did not attach the conveyor to the pickup truck, but rather attached the tongue of the conveyor to the hitch of Dan's pickup truck. Economy stated that "contrary to the allegations of the underlying complaint, Brent did not at any time 'use' Dan's pickup truck" and that the testimony from that case "was undisputed that the tongue did not become detached from the hitch of Dan's truck, but rather that the connection between the tongue and the auger, secured by Brent the day before the accident, failed, directly causing the accident."

¶ 11       Economy's complaint for declaratory judgment further alleged that Country issued an auto insurance policy to Brent with policy No. A12A2666574, that the policy period was from June 21, 2009, to December 21, 2009, and that the policy's liability-bodily injury was limited to $250,000 per person. Economy attached Country's policy to the complaint. The policy defined relative(s), nonowned vehicle, and motor vehicle as follows:

"**Relative(s)** means a person related to **you** by blood, marriage or adoption who is a resident of the same household as **you**, including a ward or foster child.

\*\*\*

**Nonowned Vehicle** in Sections 1, 2, and 3 refers to a land motor vehicle **you** or **your** **relatives** do not own and which is not available for regular use by **you** or a **relative**.

\*\*\*

**Motor Vehicle** means a land motor vehicle designed for use principally on public roads. The term motor vehicle does not include a trailer used:

1.  to haul passengers;

2.  for business purposes, other than farming;" (Emphasis in original.)

The policy further stated as follows:

"**We** will provide the insurance described in this policy through the company named on the declarations page if **you** have paid the premium and have complied with the policy provisions. When **we** refer to the policy, **we** mean **your** policy booklet (titled Auto Insurance Policy), the declarations page, applications for insurance, and any endorsements. The coverages **you** have purchased are stated on the declarations page and are subject to the limits of liability, exclusions, conditions and other terms of this policy." (Emphasis in original.)

¶ 12     Under "Section 1 – Liability Insurance" the policy stated:

"**Bodily Injury, Coverage A**

**Property Damage, Coverage B**

If **you** have paid for coverage under Section 1 (see the declarations page), **we** promise to pay all sums in behalf of an **insured** which the **insured** becomes legally obligated to pay as damages because of:

1. bodily injury (Coverage A), including death resulting from that bodily injury, sustained by any person;

2. damage to or destruction of property (Coverage B), including loss of use.

The bodily injury or property damage must be caused by an accident resulting from the ownership, maintenance, or use of an **insured vehicle**, including loading and unloading, or of any **nonowned vehicle**. Under Coverages A and B, damages include required care, loss of services, loss of use, and death.

**We** will defend any claim or lawsuit alleging bodily injury or property damage covered by this policy even if there are no grounds for a suit. **We** will make any investigation or settle any claim or suit **we** consider appropriate." (Emphasis in original.)

¶ 13    Under the "Persons Insured" section 1 of Country's policy, it stated:

"Under this Section of the policy, an **insured** is:

1. with respect to an **insured vehicle:**

a. **you** and any resident of the same household as **you**;

b. anyone using an **insured vehicle** with **your** permission or the permission of an adult **relative**;

c. anyone else, but only with respect to liability resulting from acts or omission of an **insured** as defined in a. or b. above;

2. with respect to use of a **nonowned** vehicle:

a. **you**, when **you** are using a **nonowned vehicle** or when that vehicle is used by

**your** agent (for example, an agent would include someone acting in **your** behalf);

b. **your relatives;**

3. **you** with respect to the operation and use of a **motor vehicle** owned or driven by **your** agent (for example, an agent would include someone acting in **your** behalf), provided **you** do not own, rent or lease that vehicle;

4. **you** or **your relatives** with respect to the operation, maintenance or control of a trailer." (Emphasis in original.)

The policy also stated under section 1:

"**Other Insurance**. If there is other applicable liability insurance for a loss covered by this policy, **we** will pay only **our** share of the loss. **Our** share is determined by totaling the limits of this insurance and all other collectible insurance and finding the percentage of the total which **our** limits represent. However, any insurance **we** provide with respect to an automobile **you** do not own will be excess over any other collectible insurance." (Emphasis in original.)

¶ 14 Economy alleged that Brent was covered under Country's policy for the Green accident, "on the basis that the 'bodily injury' at issue was 'caused by an accident resulting from the *** use of *** any nonowned vehicle.' " Economy stated that Country had "never asserted the position that it owes no duty to defend or indemnify Brent, other than the fact that the Economy policy applies on a primary basis, and has never asserted any such policy defense to Economy."

¶ 15 Economy further alleged in its complaint for declaratory judgment that it issued a personal automobile insurance policy to Dan with policy number 1238038150, that it was effective from April 9, 2009, through April 10, 2010, and that it listed Dan's pickup truck that he was driving

on the date of the accident as one of the insured vehicles. Economy attached a copy of the policy to its complaint. The policy defined automobile, relative, and trailer as follows:

> "**AUTOMBOBILE** means a private passenger automobile, pick-up truck, panel truck or van, designed for use mainly on public roads.
>
> ***
>
> **RELATIVE** means a person related to **you** by blood, marriage or adoption (including a ward or foster child) who resides in **your** household.
>
> **TRAILER** means a trailer designed for use with an **automobile** which is not used as an office, store, display or passenger trailer. A farm wagon or farm implement is a trailer when used with an **automobile**."  (Emphasis in original.)

The policy defined "insured" as

> "**INSURED** means:
>
> 1.  with respect to a **covered automobile**
>
> a. **you**;
>
> b.  any **relative**; or
>
> c. any other person using it within the scope of **your** permission." (Emphasis in original.)

The policy stated under the "Coverage Provided" section as follows:

> "**We** will pay damages for **bodily injury** and **property damage** to others for which the law holds an **insured** responsible because of an accident which results from the ownership, maintenance, or use of a **covered automobile**, a **non-owned automobile** or a **trailer** while being used with a **covered automobile** or **non-owned automobile**. **We** will defend the **insured**, at **our** expense with attorneys of **our** choice, against any suit or claim seeking

these damages. **We** may investigate, negotiate or settle any such suit or claim." (Emphasis in original.)

Additionally, the policy stated: "In the event of any payment under this policy, **we** are entitled to all the rights of recovery of the person to whom, or on whose behalf, payment was made." The policy also showed that the it had a $500,000 per person liability limit.

¶ 16    Economy alleged that in July 2016, it made repeated demands to Country to settle on behalf of Brent. Green settled with Brent in July 2016 and, pursuant to the agreement, Economy paid $132,000 on behalf of Brent. Economy alleged that Country refused to contribute to the settlement on behalf of Brent. Economy's complaint for declaratory judgment alleged claims for indemnification, contractual subrogation, equitable subrogation, and unjust enrichment. Economy alleged that Country, not Economy, owed indemnity coverage to Brent in the underlying litigation and despite Country's duty to indemnify Brent, it failed to contribute any amount in the settlement to Green on behalf of Brent. Economy paid Green on behalf of Brent and its payment was "standby coverage" after Country refused to fund a settlement on behalf of Brent. The settlement amount was fair and reasonable under the circumstances because Brent was solely responsible for securing the connection between the tongue and the conveyor and that connection failed, which directly caused the accident. Country owed a duty to indemnify Brent's settlement of $132,000 and Economy is entitled to recoup that payment it made on behalf of Green from Country.

¶ 17    With respect to Economy's claim for contractual subrogation, it alleged that its policy entitled it to seek recovery from Country for the indemnity payments it paid on behalf of Brent. With respect to Economy's claim for equitable subrogation, Economy alleged that it was equitably subrogated to the rights of Brent against Country "by virtue of its payment of indemnity on behalf of Brent in the underlying litigation." Lastly, Economy alleged that Country was unjustly enriched

by its refusal to indemnify Brent in the underlying litigation and that Country unlawfully and illicitly retained the amounts due for Brent's indemnity.

¶ 18                         Cross-Motions for Summary Judgment

¶ 19                    Economy's Motion for Partial Summary Judgment

¶ 20       Economy filed a motion for partial summary judgment, in which it argued that there were no questions of fact with regard to Country's duty to indemnify Brent. Economy argued that Country's policy covered Brent for the underlying case "on the basis that the 'bodily injury' at issue was 'caused by an accident resulting from the *** use of *** any nonowned vehicle."

¶ 21       Economy further contended that it did not have a duty to indemnify Brent. It asserted that when it issued its reservation of rights letter, it agreed to defend Brent on the basis that "he was at least potentially 'using' Dan's truck," because the underlying complaint alleged that Brent connected the conveyor to Dan's pickup truck with Dan's permission. Economy argued that in its reservation of rights letter, it "specifically disclaimed a duty to indemnify Brent should subsequent facts lead to a conclusion that Brent was not 'using' Dan's truck and, therefore, was not covered by the Economy policy." Economy argued that the undisputed facts that were developed in the underlying case contrasted the allegations of the complaint in that case and that, as a result, it did not have a duty to indemnify Brent. Economy further asserted that its policy issued to Dan did not cover Brent because Brent never "used" Dan's truck before the accident and was not "using" Dan's truck.

¶ 22       Economy attached copies of Dan's and Brent's deposition transcripts from the underlying case that were taken in February 2013. Economy asserted that based on Dan's and Brent's testimonies, Dan, not Brent, hooked the conveyor to Dan's truck and that, as such, Brent never "used" Dan's truck before the accident. Economy also argued that the testimony showed

that Brent only attached the tongue to the conveyor, which he did days before the accident with no plan to use Dan's truck and that, therefore, Brent was not "using" Dan's truck.

¶ 23                    Country's Cross-Motion for Summary Judgment and Response

¶ 24    In Country's cross-motion for summary judgment and response to Economy's motion for partial summary judgment, Country argued that Economy admitted that Country was "at most, an excess carrier" and that Economy had "a duty to defend at all times based on the pleadings and the law." Country argued that if there was no liability coverage for Brent under Economy's policy based on the reasoning that Brent did not "use" Dan's truck, then there was also no coverage under Country's policy, which contained essentially identical language as Economy's policy.

¶ 25    Country further argued that Economy's policy also included coverage for bodily injury that resulted from the use of a trailer while being used with a covered automobile. It argued that, therefore, the negligence claim against Brent for bodily injury resulting from the use of the trailer, which was connected to Dan's covered automobile, was covered under Economy's policy. Country asserted that Economy was attempting to obtain money from Country that it had voluntarily paid and that there was no contractual or fiduciary relationship between Country and Economy. Country argued that the Illinois Supreme Court has only recognized three specific theories under which one insurer can recover from another insurer—indemnity, equitable contribution, and equitable subrogation—and that Economy could not recover from Country under these theories.

¶ 26                    Economy's Combined Reply and Response

¶ 27    In Economy's reply in support of its motion for partial summary judgment and its response to Country's motion for summary judgment, it argued that Country did not dispute that Brent never used Dan's truck and that, as such, Economy had no duty to indemnify Brent. It also argued that Economy did not owe a duty to indemnify Brent because when Brent attached the

tongue to the conveyor, the conveyor "was not being used with Dan's truck" and Brent "was not using Dan's truck; he did not even know that Dan's truck would later haul the trailer." Economy further argued that Country waived its right to assert any coverage defenses because it never raised any defenses until it filed its cross-motion. Economy asserted that even if Country did not waive its right to contest coverage, Country's policy provided indemnity coverage for Brent under the agency clause in the "nonowned vehicle" provision in Country's policy with Brent. Economy asserted that the testimony showed that Dan was acting as Brent's agent when he towed the conveyor to the next farm.

¶ 28          Country's Reply in Support of its Motion for Summary Judgment

In Country's reply in support of its motion for summary judgment, it asserted that Economy never argued that Country had a duty to indemnify Brent because Dan was acting as Brent's agent at the time of the accident. Country stated that the agency argument was raised for the first time in Economy's combined response and reply brief on the motions for summary judgment. Country also contended that if Brent did not "use" Dan's automobile such that Brent was not covered under Economy's policy, then Brent would also not be covered under Country's policy. Country asserted that Economy "chose to allocate the lion's share of the settlement amount to an individual that was neither insured by [Economy] or [Country], as would be the ultimate result of [Economy's] argument," and that Economy "exclusively controlled the defense and settlement on behalf of Brent and Dan."

¶ 29          Brent and Dan's Deposition Testimonies

¶ 30     Attached to Economy's motion for partial summary judgment were Brent's and Dan's deposition testimonies that were taken for the underlying personal injury case on February 26, 2013.

¶ 31       Brent testified that he was part owner of Yordy Turkey Farm and Yordy Farms and that in November 2009, he had an agreement with Pioneer whereby he segregated beans for seed production and stored them for Pioneer until the beans were ready to be loaded onto Pioneer's trucks. To load the beans on the trucks, Pioneer supplied a "belt conveyor." When the beans were ready for pickup, Pioneer would generally offer to bring the conveyor to Brent. If the conveyor was at a nearby location, Brent would sometimes offer to pick it up. Brent had moved a conveyor from one farm to another farm about five or seven times and he did not receive training on how to transport it.

¶ 32       Brent testified that Pioneer delivered the conveyor at issue to the Dean Hild Farms, where their storage bin was located, and Brent helped move the seeds from the storage bin into Pioneer's trucks. Before Brent used the conveyor, he had to remove the tongue, or hitch, from the conveyor. About one or two days after Brent had finished loading the beans for the job, he returned to conveyor he had used, filled it with gas, and re-attached the tongue. To attach the tongue to the conveyor, Brent used a threaded bolt, which had come with the conveyor when it was delivered to him, and then used a wrench to tighten the nut to the bolt. He testified that he got the conveyor ready for transport "eventually" and for whomever would need it next.

¶ 33       Brent further testified that on the day of the accident, Pioneer did not ask Brent to move the conveyor. Dan offered to move the conveyor to the next farm and Brent told Dan to "just bring it home to the home farm" and "the next person would pick up there." Brent testified that Dan, "being the nice guy he is," told Brent, "Well, I'll just take it to the neighbor." Brent testified that he then "told Dan where to go with it, and [Dan] took it." Brent testified that he did not pay Dan to move the conveyor and that Dan used Dan's vehicle "just out of kindness to help out." Brent testified that the conveyor became unattached from Dan's truck because the bolt broke.

¶ 34    Dan Yordy testified he was the president of R.N. Yordy, Inc., a land-holding corporation that owns real estate and, at the time of the accident, he and Brent were part owners of Yordy Farms, which rented land from R.N. Yordy, Inc. Yordy Farms was a farming business that engaged in the operations of raising crops, soybeans, and corn. Brent and Dan each owned portions of the land that Yordy Farms used for its farming operations. Yordy Farms had a contract with Pioneer with respect to raising and storing seed beans and Dan signed the contract with Pioneer that was in effect at the time of the accident. Brent managed most of the contracts for the farm.

¶ 35    On the date of the accident, November 28, 2009, Pioneer picked up the beans from the Dean Hild Farm, a farm where Brent and Dan rented a bin. After Pioneer picked up the beans from the farm, Dan spoke with Brent, who told him, "Well we're done with those beans over there, and we need to move that conveyor sometime between now and Monday." Dan also testified that Brent told him, "Hey, we got that bin empty, the beans are all picked up; why don't you move that conveyor, just bring it to our farm." Dan testified that he told Brent, "Well, I'm not doing anything. I'll do it now," and that he told Brent that he would take it to the next person scheduled to use it. Dan testified that Brent told him that Peter Baer had planned to use it next and that he told Brent, "Well, I'll just take it to his place," which was about seven miles away from the Dean Hild Farm. Brent did not give Dan any instructions as to how to move the conveyor. Dan testified that the rule was to fill the conveyor with gasoline before transporting it and that Brent "probably told me it's full of gasoline and ready to be pulled." Dan testified that Brent also told him "it's full of gas" and "be careful."

¶ 36    Dan testified that when he arrived at the Dean Hild Farm to the move the conveyor, he did not hook up the tongue to the conveyor. He hooked the conveyor to the truck by backing up his truck, lifting the conveyor, and putting it on the hitch. When Dan was driving the conveyor to

Baer's farm, he felt the conveyor zig-zag, so he looked in the side view mirror and saw a light zig-zag. About a few seconds later, the conveyor became completely detached from Dan's truck, after which it went into a road ditch and hit Green. After the accident, the tongue was still attached to Dan's truck. Generally, the tongue should stay with the conveyor. Dan believed that the failure of the pin that hooked the tongue to the conveyor caused the conveyor to come loose from his truck. Asked whether anybody other than Brent had ever asked him to move a conveyor from one farm to another, Dan testified, "You know, I've never really been employed, so I don't have many people tell me what to do" and Brent was "probably the one that ever gives me a job." He had moved conveyors about six or eight times before the date of the accident. Pioneer never asked him to move a conveyor from one farm to another.

¶ 37       Attached to Economy's motion for partial summary judgment were the transcripts from Dan's and Brent's trial testimonies from when they testified at the jury trial for Green's case against Pioneer. Economy stated in its motion that Dan's and Brent's testimonies at that trial were consistent with their deposition testimonies for the Green case.

¶ 38                             Circuit Court's Ruling

¶ 39       At the hearing on the parties' motions for summary judgment, Economy's counsel argued that he believed the facts from the underlying case established that Brent was responsible for the connection that failed and that Brent, "contrary to the allegations of the underlying complaint which were disproved and later on through evidence, didn't qualify as an insured under the Economy policy." Economy's counsel also stated that Brent is covered under Country's policy, after which the following colloquy occurred:

"THE COURT: Is the issue here whether he was using the vehicle?

-15-

MR. SYREGELAS [(PLAINTIFF's ATTORNEY)]: The issue here is that the vehicle was being used for him by an agent to his dad. So under the insured provision, which I can hand up to the Court, if you would like it, with respect to use of a non—

THE COURT: Whose farm is it?

MR. SYREGELAS: Both.

MR. CARLSON [(DEFENSE ATTORNEY)]: Both of theirs. They both own it jointly.

THE COURT: So does that make one the agent of the other? I mean, partners, are they agents of the other?

MR. SYREGELAS: I don't know that this—I don't know—I do know. This transaction was not part of their joint business.

THE COURT: It was or was not?

MR. SYREGELAS: It was not. His father was doing—

THE COURT: But how can that be if the auger is being used—

MR. SYREGELAS: Because the testimony says it.

THE COURT: — to move grain?

MR. SYREGELAS: Because the testimony says it. Brent testified that his dad was doing him a favor by moving the auger to another farm.

THE COURT: Well, that's kind of—people do others favors all the time even though it might be when they are business partners. Father and son, Dan and Brent, are business partners in this farm, right?

MR. SYREGELAS: Correct."

¶ 40    Country's counsel argued that Economy did not plead an agency theory and did not plead any of the facts regarding Dan being Brent's agent in the underlying case, the declaratory

judgment complaint, or reservation of rights. He argued that Economy raised the issue for the first time in its reply brief. Country's counsel also argued that there was potential coverage for Brent under Economy's policy because of Brent's "use of the trailer connected to the covered automobile" and it was alleged that Brent improperly connected the tongue to the conveyor.

¶ 41    Following argument, the court denied Economy's motion for partial summary judgment and granted Country's motion for summary judgment. In doing so, the court stated:

"So Economy's motion for partial summary judgment is predicated on the theory that—agency theory, which is that Brent was a principal and Dan was an agent. And it is predicated on the testimony that Brent had—or told Dan's father to bring the auger back to the farm, their farm, jointly owned. And Dan said that no. I am going to drive it down to the next user, presumably being a good neighbor. I am just not persuaded that's what this provision is intended to attract. I am not persuaded by the agency argument. Typically an agent has the principal's direction here. Well, they are business partners. So if [Dan] is Brent's agent, the dad is the son's agent, and it is acceptable, but even if it is, there is nothing against the son's wishes."

¶ 42    This appeal followed.

¶ 43                                II. ANALYSIS

¶ 44    On appeal, Economy argues, *inter alia*, that Country owes a duty to indemnify Brent and therefore had a duty to compensate it for settling on behalf of Brent. Economy argues that it is fully subrogated to Brent's right to coverage under the Country policy, because Country had a duty to insure Brent and Economy did not. It argues that Country waived any right to assert any policy defenses in its obligation to indemnify Brent because it failed to raise any defenses in a reservation of rights and that the only defense that Country ever pled was that Economy's policy

was primary and sufficient to satisfy the settlement. Economy contends that it had no duty to indemnify Brent and Brent did not qualify as an "insured" under its policy because Brent was not "using" Dan's truck at the time of the accident, noting that Dan connected the conveyor to the truck and Brent only connected the conveyor to the hitch. Economy also argues that Country's policy covered Brent for Dan's use of his truck at the time of the accident because Dan was acting as Brent's agent and Country's policy covers Brent when a "nonowned vehicle" is used by Brent's agent. Economy claims that the evidence was clear that Dan towed the conveyor on Brent's behalf. Economy argues that because Country had an obligation to indemnify Brent and Economy did not have a duty but paid the full amount of the settlement, it is entitled to recover from Country under the principles of indemnification, subrogation and unjust enrichment.

¶ 45    In response, Country argues, *inter alia*, that the circuit court properly determined that Economy did not prove agency and Country did not owe a duty to indemnify Brent. Country argues that there is no recognized theory under which Economy can recover from Country the money that Economy paid on behalf of Brent. Country asserts that Economy "is the acknowledged primary insurer of [Brent]" and that "[i]t admits it always had the primary duty to defend, but nevertheless is seeking to recover from another insurer with whom it has no relationship what it voluntarily paid as a primary insurer in settlement."

¶ 46    A circuit court may properly grant summary judgment where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2018). "[T]he construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court and appropriate subjects for disposition by summary judgment." *Konami (America), Inc. v. Hartford Insurance Co. of*

*Illinois,* 326 Ill. App. 3d 874, 877 (2002). When parties file cross-motions for summary judgment in an insurance case, they acknowledge that no material questions of fact exist, and the only issue of law present is regarding the construction of an insurance policy. *American Family Mutual Insurance Co. v. Fisher Development, Inc.,* 391 Ill. App. 3d 521, 525 (2009). Our review of a circuit court's ruling on a motion for summary judgment is *de novo. Clark Investments, Inc. v. Airstream, Inc.*, 399 Ill. App. 3d 209, 213 (2010). We may affirm a grant of summary judgment on any basis appearing in the record. *Home Insurance Co. v. Cincinnati Ins. Co.,* 213 Ill. 2d 307, 315 (2004).

¶ 47        "The primary objective in construing the language of an insurance policy is to ascertain and give effect to the intentions of the parties as expressed in their agreement." *Pekin Insurance Co. v. CSR Roofing Contractors, Inc.*, 2015 IL App (1st) 142473, ¶ 26. "If the terms of a policy are clear and unambiguous, they must be given their plain and ordinary meaning." *American States Insurance Co. v. Koloms*, 177 Ill. 2d 473, 479 (1997). However, if "the policy language is ambiguous, it will be construed liberally in favor of coverage." *Markel International Insurance Co. Ltd. v. Montgomery*, 2020 IL App (1st) 191175, ¶ 37.

¶ 48        In seeking repayment from Country, Economy is claiming that, as Brent's insurer, Country should be compelled to repay Economy for the settlement amount that it paid on behalf of Brent because Country was the insurer directly responsible for covering Brent. See generally, 15 Couch on Ins. § 217:16. Both parties agree that this turns on whether Country's policy provided coverage for Brent, although each of them also contends that the other waived or was estopped from asserting that the policy language did not apply to the Green accident.

¶ 49                        Economy's Waiver Argument

¶ 50　　Economy asserts that Country had a duty to indemnify Brent and it waived any limitation on that duty by its failure to plead its "non-owned vehicle limitation" or to assert this limitation in a reservation of rights. Specifically, according to Economy, Country was required to plead as an affirmative defense or in a counterclaim or in a reservation of rights, that there was no coverage for Brent in this accident because the accident was in a "non-owned vehicle," and Dan was not acting as the agent of Brent at the time of the accident. According to Economy, the fact that the pleadings are silent on this issue and that there was never a reservation of rights from Country, means that the circuit court should not have even considered the language of its policy that Country relies on to find that Brent was not insured by Country for this accident.

¶ 51　　Economy presents no authority for placing this burden on Country. Rather, the burden was on Economy to show that another insurer—here Country—had the obligation to indemnify Brent. Economy cites cases where an insurer, who fails to defend its insured under a reservation of rights or seek a declaratory judgment that there is no coverage, is estopped from raising policy defenses to coverage. See, *e.g., Standard Mutual Insurance Co. v. Lay*, 2013 IL 114617, ¶ 19. However, Economy states in its reply brief that it has "never argued that Country either had a duty to defend or that it is estopped" and, as those cases make clear, where, as here, Country had no obligation to defend in the underlying case against Brent, it cannot now be estopped from asserting a defense based on policy language. See *Employer's Reinsurance Corp. v. E. Miller Insurance Agency, Inc.*, 332 Ill. App. 3d 326, 340 (2002) ("the estoppel doctrine applies only when an insurer has breached its duty" and "if the insurer had no duty to defend or its duty to defend was not properly triggered, estoppel cannot be applied against the insurer"). Further, Economy cites no cases that suggest that estoppel applies in this context or that Country cannot rely on policy language because it did not specifically cite that language in the pleadings. Accordingly, we agree

with Country that it had no burden to reserve its rights to rely on language in its policy. We reject Economy's argument that Country is estopped from directing the court to the language of the policy to determine whether Country had an obligation to indemnify Brent for this accident. We turn therefore to the language of the policy and we agree with the circuit court that Country had no obligation to indemnify Economy for the settlement it paid on behalf of Brent for this accident.

¶ 52                                   Nonowned Vehicle Provision in Country's Policy

¶ 53        Economy argues that Country's policy provided indemnity coverage for Brent under the "nonowned vehicle" provision in its policy. This provision defined "insured" as follows: "**you**, when **you** are using a **nonowned vehicle** or when that vehicle is used by **your** agent (for example, an agent would include someone acting in **your** behalf)." (Emphasis in original.) The parties do not dispute that Dan owned the truck that was involved in the Green accident or that the truck was considered a "nonowned vehicle" under Country's policy with Brent. The parties also do not dispute that Dan was driving the truck involved in the Green accident or that Dan connected the conveyor to the truck while Brent connected the tongue to the conveyor. Economy argues that Brent is covered under the nonowned vehicle provision because Dan's truck, the nonowned vehicle, was used by Dan, Brent's agent.

¶ 54                                                    Agency

¶ 55        We initially note that in the underlying complaint, Green did not allege any theories based on an agency relationship between Dan or Brent or any facts to support that Dan was acting on Brent's behalf at the time of the accident. Rather, since Economy is asserting that Country had an obligation to indemnify Brent, it is relying on the actual facts, rather than the facts as they were pled. See, *American States Insurance Co., v. CFM Construction Co.*, 398 Ill. App. 3d 994, 1001 (2010) ("The duty to indemnify turns on whether the claim is covered by the policy."). When the

circuit court denied Economy's motion for partial summary judgment, it expressly found that the facts did not support Economy's agency theory. We agree.

¶ 56    "An agency is a fiduciary relationship in which the principal has the right to control the agent's conduct and the agent has the power to act on the principal's behalf." *Kaporovskiy v. Grecian Delight Foods, Inc.*, 338 Ill. App. 3d 206, 210 (2003). "A principal-agent relationship exists when the principal has the right to control the manner in which the agent performs his work and the agent has the ability to subject the principal to personal liability." *Kaporovskiy*, 338 Ill. App. 3d at 210. "The right to control the actions of another is a hallmark of agency." *Id.*

¶ 57    Here, as previously discussed, Country's policy with Brent provided coverage for Brent if the nonowned vehicle "is used by **your** agent (for example, an agent would include someone acting in **your** behalf)." (Emphasis in original.) However, the record does not show that Dan was acting on Brent's behalf or that he acted at Brent's direction when he decided to tow the conveyor to the other farm. The record shows that Dan and Brent were part owners of Yordy Farms and that Pioneer, not Brent, owned the conveyor at issue. Although Brent managed most of the contracts for the farm, Dan signed the contract with Pioneer that was in effect at the time of the accident. Brent did not pay Dan to move the conveyor and Dan testified that Brent did not give him any instruction as to how to move the conveyor.

¶ 58    Further, Brent's and Dan's deposition testimonies regarding Dan's decision to transport the conveyor to the next farm does not support that Dan was acting on Brent's behalf when he made that decision, and we disagree with Economy's assertion that the record "is clear that Brent *explicitly* asked Dan to move the conveyor." (Emphasis in original.) Brent testified that on the day of the accident, Dan offered to move the conveyor to the next farm and Brent told Dan to "just bring it home to the home farm" and "the next person would pick up there." Brent also testified

that Dan told him "being the nice guy he is" that he would "just take it to the neighbor" and that Dan moved the conveyor "just out of kindness to help out." Dan's testimony regarding his decision to move the conveyor also supports that he did not move the conveyor to the next farm on Brent's behalf. Dan testified that after Pioneer picked up the beans, Brent told Dan, "[W]e're done with those beans over there, and we need to move that conveyor sometime between now and Monday," after which Dan told Brent that he was not "doing anything" and "I'll do it now." We acknowledge that Dan also testified that Brent told Dan, "[W]hy don't you move that conveyor, just bring it to our farm." However, based on the record as a whole, we cannot find that Dan moved the conveyor to the next farm at Brent's direction or on Brent's behalf. Thus, we disagree with Economy's argument that Country's policy covered Brent under the nonowned vehicle provision because Dan was acting as Brent's agent.

¶ 59    Citing *Ioerger v. Halverson Construction Co., Inc*. 232 Ill. 2d 196, 2002 (2008), Economy asserts that Dan was Brent's agent because "[p]artners are agents of the partnership ***and of one another*** for purposes of the business." (Emphasis in original.) However, the testimony shows that Dan and Brent were part owners of Yordy Farms. Asked whether "Yordy Farms in any way incorporated or a partnership or anything like that?" Dan responded, "No. It's just doing business as." Thus, we are unpersuaded by Economy's argument that Dan was acting as Brent's agent when he drove the conveyor to the other farm solely because they are considered agents of one another by virtue of a partnership.

¶ 60    Accordingly, the nonowned vehicle provision in Country's policy did not provide coverage for Brent based on Dan having acted as an agent of Brent or on Brent's behalf. The circuit court did not err when it granted summary judgment in favor of Country.

¶ 61                    Brent's "Use" of the Nonowned Vehicle

¶ 62      To the extent Economy argues that Brent is covered under the nonowned vehicle provision in Country's policy because Brent was personally "using" a nonowned vehicle, we disagree. Economy acknowledged in its complaint for declaratory judgment that Brent did not "use" Dan's truck, as it stated that "contrary to the allegations of the underlying complaint, Brent did not at any time 'use' Dan's pickup truck." Likewise, in Economy's motion for partial summary judgment, it argued that it did not have a duty under its policy with Dan to indemnify Brent because Brent was not "using" and he never "used" Dan's truck before the accident. Specifically, Economy argued that the undisputed facts involving the trailer and its attachment to Dan's pickup truck contrasted with the allegations in the underlying complaint and showed that Dan, not Brent, hooked the conveyor to Dan's truck and that, as such, "Brent never 'used' Dan's truck" before the accident. Economy also asserted that Brent was not 'using' Dan's pickup truck because [he] did not attach the auger to Dan's pickup truck" and that "he only attached the tongue to the auger and that was done days before the accident." Accordingly, given that Economy acknowledged that Brent was not using Dan's truck and that Brent never used it when he connected the tongue to the conveyor, we cannot find that Country's policy covers Brent for the Green accident under the provision in Country's policy that provides coverage if Brent was personally "using" a "nonowned vehicle."

¶ 63                                    Subrogation

¶ 64      Economy argues that it is entitled to recover against Country under the theory of contractual subrogation pursuant to a subrogation clause in its policy with Dan, which states: "In the event of any payment under this policy, **we** are entitled to all the rights of recovery of the person to whom, or on whose behalf, payment was made." (Emphasis in original.) Economy argues that the subrogation clause in its policy with Dan transfers Brent's rights to recover against Country

to Economy upon Economy's payment of Brent's claim. Economy also argues that, in the alternative, Economy is entitled to equitable subrogation.

¶ 65 "Subrogation simply means substitution of one person for another; that is, one person is allowed to stand in the shoes of another and assert that person's rights against the Country." (Internal quotation marks omitted.) *State Farm Mutual Automobile Insurance Co. v. Easterling*, 2014 IL App (1st) 133225, ¶ 20 (quoting *Trogub v. Robinson,* 366 Ill. App. 3d 838, 842 (2006)). Subrogation allows a party who pays a debt or claim of another to succeed to the rights of the other with respect to the debt or claim the party paid. *State Farm Mutual Automobile Insurance Co. v. Du Page County*, 2011 IL App (2d) 100580, ¶ 33. "The right of subrogation may be grounded in equity and may also be founded upon an express or implied agreement." *North American Insurance Co. v. Kemper National Insurance Co.*, 325 Ill. App. 3d 477, 481 (2001). "The doctrine of subrogation is broad enough to include every instance in which one person, not a mere volunteer, pays a debt for which another is primarily liable and in which equity and good conscience should have been discharged by the latter." *Id.* "Where the right of subrogation is created by the terms of an enforceable contract, the contract terms control, rather than common law or equitable principles." *American Family Mutual Insurance Co. v. Northern Heritage Builders, L.L.C.*, 404 Ill. App. 3d 584, 588 (2010). "A claim for equitable or contractual subrogation requires the following elements: (1) the defendant carrier must be primarily liable to the insured for a loss under an insurance policy; (2) the plaintiff carrier must be secondarily liable to the insured for the same loss under its policy; and (3) the plaintiff carrier must have discharged its liability to the insured and at the same time extinguished the liability of the defendant carrier." *SwedishAmerican Hospital Association of Rockford v. Illinois State Medical Inter-Insurance Exchange*, 395 Ill. App.

3d 80, 105 (2009); see also *State Farm Mutual Automobile Insurance Co.*, 2014 IL App (1st) 133225, ¶ 21.

¶ 66    Here, Economy, the plaintiff insurer, is seeking recovery from Country, the defendant insurer, based on the subrogation clause in Economy's policy with Dan and is claiming that it is a subrogee of Brent because it paid Green in the underlying accident on behalf of Brent. Economy argues that as a subrogee of Brent, it is entitled to recover from Country because Country's policy covers Brent for the Green accident under the nonowned vehicle provision. However, as previously discussed, Economy has not established that Country's policy with Brent covers Brent for the underlying accident. Economy therefore cannot show that Country is liable to Brent or that Economy is entitled to recover from Country the payments it made on behalf of Brent in the underlying case. Thus, Economy cannot establish its claims for either equitable or contractual subrogation.

¶ 67    We note that in Economy's reply brief, it asserts that it is entitled to recover from Country under its contractual subrogation claim. Citing various cases with Country as a party, Economy argues that Country has a similar subrogation clause in the policy at issue here and has "vigorously litigated its right to assert its insureds' claims thereunder." Even if the cases cited by Economy would apply here, they do not impact our analysis. As previously discussed, Country's nonowned vehicle provision in its policy does not cover Brent for the Green accident and therefore, Economy, who asserts it is a subrogee of Brent under the subrogation clause in its policy with Dan, is not entitled to recover from Country the payments it made on behalf of Brent pursuant to a settlement agreement in the underlying case.

¶ 68                                Unjust Enrichment

¶ 69 Lastly, Economy asserts it is entitled to recover from Country under the theory of unjust enrichment. To properly plead an unjust enrichment claim, "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Gagnon v. Schickel*, 2012 IL App (1st) 120645, ¶ 25 (quoting *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.,* 131 Ill. 2d 145, 160 (1989)). Unjust enrichment "is inapplicable where an express contract, oral or written, governs the parties' relationship." *Id.* "For a cause of action based on a theory of unjust enrichment to exist, there must be an independent basis that establishes a duty on the part of the defendant to act and the defendant must have failed to abide by that duty." *Philadelphia Indemnity Insurance Co. v. Pace Suburban Bus Service*, 2016 IL App (1st) 151659, ¶ 49. As previously discussed, Country had no duty to indemnify Brent as Brent was not covered under Country's policy for the Green accident. Thus, Economy cannot show that Country unjustly retained a benefit and Economy has not established a claim for unjust enrichment. The circuit court therefore did not err when it granted Country's motion for summary judgment and denied Economy's motion for partial summary judgment.

¶ 70                                    III. CONCLUSION

¶ 71 Based on the foregoing, we affirm the circuit court's decision to grant Country's motion for summary judgment and deny Economy's motion for partial summary judgment.

¶ 72 Affirmed.